UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARILYN OVERALL, on behalf of
herself, individually, and on behalf
of all others similarly situated,

      Plaintiff,

vs.                                                   Case No. 13-11396

ASCENSION, a non-profit corporation;             HON. AVERN COHN
ASCENSION HEALTH ALLIANCE, a non-profit
corporation; CATHOLIC HEALTH
INVESTMENT MANAGEMENT COMPANY, a
non-profit corporation; DEREK BEECHER, an
individual; JEAN DEBLOIS, an individual; ERIC
FEINSTEIN, an individual; WILLIAM
FINLAYSON, an individual; TIMOTHY FLESCH,
an individual; TRENNIS JONES, an individual;
KATHLEEN KELLY, an individual; ELLEN
KRON, an individual; TOM LANGSTON, an
individual; LAURA LENTENBRINK, an
individual; PATRICK MCGUIRE, an individual;
JOSEPH O. MURDOCK, an individual; THERESA
PECK, an individual; BARBARA POTTS, an
individual; LARRY SMITH, an individual;
ANTHONY TERSIGNI, an individual; HERBERT
VALLIER, an individual; DOUGLAS WAITE, an
individual; FRANK WARNING, an individual;
CAROL WHITTINGTON, an individual; and
JOHN and JANE DOES 1-20,

      Defendants.

_____/

<u>**DECISION AND ORDER**</u>
<u>**GRANTING DEFENDANTS' MOTION TO DISMISS (Doc. 22)**</u>
<u>**AND DENYING PLAINTIFF'S MOTION TO DISREGARD EXHIBITS**</u>
<u>**(Docs. 29, 53)**</u>
<u>**AND DISMISSING CASE**</u>

**SUMMARY OF DECISION**[*]

In this case under the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq., plaintiff is suing multiple defendants associated with pension plans provided by Ascension Health Alliance.  Ascension Health Alliance operates, through subsidiaries, hospitals throughout the United States.  Plaintiff, on behalf of herself and others, claims that defendants have violated ERISA.  The key issue is whether the pension plans qualify as church plans under 29 U.S.C. § 1003(b)(2) which are specifically exempted from ERISA's coverage.  The Court holds a plan need not be established by a church in order to qualify as a church plan.  The Court also hold that the plans, as a consequence of the management structure of Ascension Health Alliance, are church plans.  This is so because Ascension Health Alliance is controlled by and associated with the Roman Catholic Church.  Therefore, plaintiff's ERISA claims must be dismissed.  The Court also holds that the complaint does not sufficiently set forth facts to allege a specific injury suffered by plaintiff so as to enable her to bring a constitutional challenge to ERISA's church plan exemption.

---

[*]This summary is provided for informational purposes only.

## **TABLE OF CONTENTS**

I.      Introduction                                                                 1

II.     The Class Action Complaint (CAC)                                     2
        A.      The Parties                                                          2
        B.      The Claims                                                           3

III.    General Background                                                     4
        A.      The Church Plan Exemption                                      4
        B.      The Parties' Positions                                           5
                1.      Statutory Argument                                       5
                2.      Non-Statutory Argument                                  6
                3.      Constitutional Argument                                 6

IV.     Motion to Dismiss - Legal Standards                               7

V.      Motions to Disregard Exhibits                                       9

VI.     Analysis                                                              12
        A.      Background                                                      12
                1.      The Legislative History                               12
                2.      IRS Rulings                                            14
                3.      Case law                                               16
        B.      Decision                                                       17
                1.      A Church Plan Need Not Be Established by a Church      17
                2.      The Plans are Church Plans                             20
                        a.      Ascension is Controlled by the
                                Roman Catholic Church                          20
                        b.      Ascension is Associated with the
                                Roman Catholic Church                          23
                3.      Plaintiff's Constitutional Claim                       26

VII.    Conclusion                                                            27

CODA                                                                           28

## I.  Introduction

This is a case brought under the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq. against multiple defendants associated with defined pension plans provided by Ascension Health Alliance.  As will be explained, Ascension Health Alliance operates, through subsidiaries, a hospital conglomerate in 21 states and the District of Columbia.  Plaintiff Marilyn Overall is suing on behalf of herself and all those similarly situated,[1] claiming that defendants have violated their obligations under ERISA relative to the pension plans.  At its core, this case is about whether the plans at issue are church plans under 29 U.S.C. § 1003(b)(2) such that they are exempt from various ERISA requirements, including funding and reporting requirements.  Defendants argue that the plans are church plans because they are both controlled by and associated with the Roman Catholic Church.  Plaintiff says that while the plans been operating under the church plan exemption under ERISA, they should not be considered church plans but rather pension plans subject to ERISA.  As plans subject to ERISA, plaintiff says that defendants have violated ERISA's requirements in multiple ways.  Plaintiff also says that if the plans are church plans, then they violate the Establishment Clause.

Before the Court is defendants motion to dismiss under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).  Also before the Court are plaintiffs' motion to disregard the exhibits to defendants' motion to dismiss.

For the reasons that follow, defendants' motion to dismiss will be granted and

---

[1]Plaintiff requests class action status; however, no motion for class certification is pending.

plaintiff's motion to disregard the exhibits will be denied.  As will be explained, the plans at issue are church plans as defined under ERISA.  This conclusion is consistent with ERISA's statutory language, legislative history and relevant agency interpretations. Because they are church plans and exempt from ERISA, plaintiff's ERISA claims fail to state a viable claim for relief.  Because plaintiff has not sufficiently set forth an injury with respect to her Establishment Clause challenge, her constitutional claim must be dismissed.

## II.  The Class Action Complaint (CAC)

The CAC is 70 pages, including caption and table of contents.  It runs 206 paragraphs and contains a detailed multi-paragraph prayer for relief.

## A.  The Parties

**Marilyn Overall** is a resident of Detroit, Michigan.  She is a former employee of St. John Health System d/b/a St. John Health Providence Health System ("St. John"). St. John owns and operates 5 hospitals and more than 125 medical facilities in the state of Michigan.  St. John is a $2 billion health system and the largest single component of Ascension Health.  One of the largest employers in metro Detroit, St. John employs over 18,000 people.  Plaintiff was first hired at St. John in 1991, and worked at St. John's Detroit Riverview Medical Center, a division of St. John's Riverview Hospital. Plaintiff is not a member of the Roman Catholic Church.

Plaintiff is a participant in the St. John Health Pension Plan administered by the Ascension Health Pension Committee.  Doc. 1, CAC at ¶18; Doc. 47-3, Exh. W, St. John Pension Health Plan §§ 2.50 & 9.1.  While plaintiff is a participant in only one

plan–the St. John Health Pension Plan–she is challenging all of the plans under Ascension Health Alliance.

**Ascension Health Alliance** is a Missouri non-profit corporation and the parent company of the other corporate defendants.  Doc. 22-8, Exh. G, Bylaws of Ascension Health Alliance, Art. III, § 3.2.  Ascension Health Alliance is the sole member of defendant **Ascension Health**, which is also a Missouri non-profit corporation and operates health care ministries, including hospitals and other related health care providers.  Doc. 22-3, Exh. B, Articles of Incorporation of Ascension Health, Art. II, § 2.1.1.  Ascension Health is the sole member of Plaintiff's former employer, St. John, which is an entity within the Ascension Health system.  Doc. 47-1, Exh. U, Articles of Incorporation of St. John Health, Art. III.E.

**Catholic Health Investment Management Company** ("CHIMCO") is part of the Ascension system under the control of Ascension Health Alliance, and is a participating employer in the Ascension Health Pension Plan.  Doc. 23-1, Exh. K, Ascension Health Pension Plan, Addendum, CHIMCO.  Going forward, the corporate defendants will be referred to collectively as "Ascension."

The other individual defendants are present or former employees, board members, or board committee members of the corporate defendants.  Plaintiff alleges that these individuals are fiduciaries under ERISA.

### B.  The Claims

The CAC asserts nine (9) causes of action, all of which are found under Section VII. of the CAC.  They are as follows:

3

Count I          Claim for equitable relief under ERISA Section 502(a)(3) against
                 Ascension Health

Count II         Claim for failure to provide notice of reduction in benefit accruals
                 under ERISA section 204(h) against Ascension Health

Count III        Claim for violation of reporting and disclosure provisions under
                 ERISA against Ascension Health

Count IV         Claim for failure to provide minimum funding under ERISA against
                 Ascension Health

Count V          Claim for failure to establish the Plans pursuant to a written
                 instrument meeting the requirements of ERISA section 402 against
                 Ascension Health

Count VI         Claim for failure to establish a trust meeting the requirements of
                 ERISA section 403 against Ascension Health

Count VII        Claim for a civil money penalty under ERISA section 502(a)(1)(A)
                 against Ascension Health

Count VIII       Claim for breach of fiduciary duty against all defendants

Count IX         Claim for declaratory relief that the church plan exemption, as
                 claimed by Ascension Health, violates the Establishment Clause of
                 the First Amendment of the Constitution and is therefore void and
                 ineffective

Count IX is a contingent claim.  Plaintiff alleges that if the Ascension plans are

church plans exempt for ERISA, then the church plan exemption is unconstitutional as

applied to the Ascension plans.

### III.  General Background

### A.  The Church Plan Exemption

ERISA's coverage, which provides a comprehensive set of duties and

requirements on plans, plan administrators, and fiduciaries to a plan, does not extend to

"church plans."  This is known as the church exemption.  It is found under 29 U.S.C.§

4

1003(b)(2), which states:

> (b) The provisions of this subchapter shall not apply to any employee benefit plan if--
> (2) such plan **is a church plan (as defined in section 1002(33) of this title)** with respect to which no election has been made under section 410(d) of Title 26.

(Emphasis added).  The parties dispute the proper interpretation of section 1002(33) and whether the Ascension plans meet the definition of a church plan.

### B.  The Parties' Positions

### 1.  Statutory Argument

Plaintiff makes two statutory arguments challenging the application of the "church plan" exemption to Ascension's pension plans.  First, she argues that ERISA's "church plan" exemption does not include plans established and maintained by organizations that are not "churches," i.e., that are not places of worship, even if these organizations are controlled by or associated with a church.  Second, she argues that the "plan committee" exemption in ERISA § 3(33)(I) is limited to what are called "pension boards," incorporated organizations that historically oversaw pension plans for congregational church organizations.  Thus, Plaintiff contends that plans administered by committees, such as the Ascension Health Pension Committee here, do not qualify a plan for the "church plan" exemption.

Ascension contends that these statutory arguments are contrary to the statutory language and the long-standing construction of the statute by the Internal Revenue Service ("IRS") and the courts.  Ascension argues that plans established by hospitals or schools may qualify for "church plan" status if the hospital or school that sponsors the plan is controlled by or associated with a church.  The statutory language and the IRS

do not impose any pension board requirement.  Instead, the statute permits "church plans" to be administered by a plan administrative committee that is appointed by an organization, here Ascension Health, that is controlled by or associated with a church.

## 2.  Non-Statutory Argument

Plaintiff argues that putting aside the statutory language, the Ascension pension plans still do not qualify for the "church plan" exemption because she says Ascension is not controlled by or associated with the Roman Catholic Church.

Ascension argues that under both ERISA and the Internal Revenue Code, a non-church entity can establish a "church plan" if the organization is either controlled by or associated with a church.  Regarding control, defendants say that the corporate documents of Ascension and its subsidiaries establish that (1) Ascension and its subsidiaries are obligated to operate Roman Catholic health ministries in conformity with Roman Catholic doctrine, and (2) the Roman Catholic Church, through its religious orders, appoints the members that control Ascension and its subsidiaries.

Regarding association, Ascension says that plaintiff's association challenge is proscribed by the First Amendment.  The First Amendment creates a protected zone of church autonomy for churches to decide free from government interference their canon law, doctrine, mission, administration, polity, and who is within their religious community.  These are issues of faith, not fact, allocated under the First Amendment to the Roman Catholic Church to decide, not the Court.

## 3.  Constitutional Argument

Plaintiff argues that if the "church plan" exemption includes church-affiliated organizations, such as hospitals or schools, then Congress violated the Establishment

Clause of the First Amendment in drafting this exemption.

Ascension says plaintiff lacks standing to pursue a constitutional claim and that even if she alleged standing, the exemption meets the requirements under <u>Lemon v. Kurtzman</u>, 402 U.S. 602 (1971).

### IV.  Motion to Dismiss - Legal Standards

A motion to dismiss for lack of standing is properly brought under Rule 12(b)(1). <u>Leffew v. Kugler</u>, 220 B.R. 598, 601 (E.D.Tenn. 1998).  A Rule 12(b)(1) motion to dismiss based on lack of subject matter jurisdiction falls into two general categories: facial attacks and factual attacks.   <u>United States v. Ritchie</u>, 15 F.3d 592, 598 (6th Cir.1994).  "A facial attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party."  <u>Id</u>. (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 235–37 (1974)).  On the other hand, a factual attack "is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations."  <u>Id</u>. (citing <u>Ohio Nat'l Life Ins. Co. v. United States</u>, 922 F.2d 320, 325 (6th Cir.1990)). Therefore, "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  <u>Id</u>.

A motion to dismiss under Rule 2(b)(6) tests the sufficiency of a complaint.  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  <u>See also Ass'n of Cleveland Fire</u>

7

Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007).  "[T]hat a court

must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions.  Threadbare recitals of all the elements of a cause of action, supported by

mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

The court is "not bound to accept as true a legal conclusion couched as a factual

allegation."  Id. at 679 (internal quotation marks and citation omitted).

     Moreover, "[o]nly a complaint that states a plausible claim for relief survives a

motion to dismiss."  Id.  "Determining whether a complaint states a plausible claim for

relief will . . . be a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense.  But where the well-pleaded facts do not permit

the court to infer more than the mere possibility of misconduct, the complaint has

alleged – but it has not shown – that the pleader is entitled to relief."  Id. (internal

quotation marks and citation omitted).  Thus, "a court considering a motion to dismiss

can choose to begin by identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth.  While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations.

When there are well-pleaded factual allegations, a court should assume their veracity

and then determine whether they plausibly give rise to an entitlement to relief."  Id.  In

sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim for relief that is plausible on its face."  Id. at 678

(internal quotation marks and citation omitted).


     In ruling on a motion to dismiss, the Court may consider the complaint as well as

(1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies may be appended to a motion to dismiss.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007).  Additionally, extrinsic materials may be considered by a court if they "filled in the contours and details" of a complaint. Yeary v. Goodwill Indus.-Knoxville, Inc., 107 F.3d 443, 445 (6th Cir. 1997).

### V.  Motions to Disregard Exhibits

Both parties have submitted various exhibits with their papers.  Plaintiff has twice moved the Court to disregard all of defendants' exhibits.  The motions will be denied.

As an initial matter, plaintiff's counsel conceded at oral argument that plaintiff does not challenge the authenticity of the documents.  Hearing on Defendants' Motion to Dismiss Transcript - Volume 2, page 4, lines 13-21.  For the reasons outlined below, the documents may properly be considered by the Court.

Defendants have submitted exhibits demonstrating that Ascension is controlled by and associated with the Roman Catholic Church.  The exhibits generally fall into two categories:  (1) documents that are central to, referenced in, or relied upon in the Complaint; and (2) government documents, public documents, or publications.  In addition, Defendants have included the Official Catholic Directory among these exhibits.  See Doc. 22-9, Defs.' Ex. H.  The Official Catholic Directory is a published book, widely disseminated, publicly available, and generally known.  See Marshall v. Sisters of Holy Family of Nazareth, 399 F. Supp. 2d 597, 606 (E.D. Penn. 2005) (relying on, inter alia, the Official Catholic Directory to demonstrate that defendant was a religious organization).

9

The directory meets the requirements of Fed. R. Evid. 201.  Therefore, the Court

may take judicial notice of the fact that Ascension Health, Ascension Health Alliance,

CHIMCO, and St. John Health are listed within it.  See, e.g., Catholic Charities of Maine

v. City of Portland, 304 F. Supp. 2d 77, 85-86 (D. Me. 2004) (referring to, inter alia, the

Official Catholic Directory as evidence that Catholic Charities' health benefit plans

qualify for ERISA church-plan status); Hartwig v. Albertus Magnus Coll., 93 F. Supp. 2d

200, 202-203 (D. Conn. 2000) (explaining that "the Official Catholic Directory . . . is the

definitive compilation of Roman Catholic institutions in the United States").

As noted above, the Court may consider documents that are central to,

referenced in, or relied upon in the complaint.  In the CAC, plaintiff either explicitly or

implicitly references:  (1) The Ascension Health (Defs.' Ex. K) and St. John Health

(Defs.'Ex. W) Pension Plans (see CAC at ¶ 3, 79-90, 96-104, 108-110, Section VII,

Causes of Action); (2) Ascension's 2012 Financial Statements (Defs.' Ex. I) (see CAC at

¶ 3, 8, 76, 78, 205A); and (3) the Ascension Health (Defs.' Ex. B), Ascension Health

Alliance (Defs.' Ex. F), and St. John Health (Defs.' Ex. U) Articles of Incorporation (see

CAC at ¶ 19, 20, 58, 61); and the Bylaws of Ascension Health Alliance (Defs.' Ex. G)

(see CAC at ¶ 19, 20, 58, 61).  These documents are central to the complaint and

therefore properly before the Court.

Defendants' exhibits also include public documents, government documents, and

publications.  The Court may take judicial notice of public documents and government

documents because their sources "cannot reasonably be questioned."  Fed. R. Evid.

201(b); see also Colvin v. Veterans Admin. Med. Ctr., 390 F. App'x 454, 456 (6th Cir.

2010) (taking judicial notice of "finding by Ohio Department of Job and Family Services

10

that [plaintiff's] termination was not justified"); City of Monroe Emps. Ret. Sys. v. Bridgestone Corp., 399 F.3d 651, 655 n.1 (6th Cir. 2005) (taking judicial notice of information posted on NASD website); United States v. Bioport Corp., 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003).

As such, the Court may take judicial notice of the Articles of Incorporation of Ascension Health, Ascension Health Alliance, and St. John Health, which are public documents filed with the Missouri and/or Michigan Secretary of State and are available on the states' websites.  Similarly, the Court may take judicial notice of Ascension's Financial Statements, because they are also public documents, as plaintiff agrees. Doc. 1, CAC at ¶ 76.

The Court may also take judicial notice of the IRS Private Letter Rulings (Defs.' Exs. L, Y) and Determination Letters (Defs.' Exs. M, X), because they are letters from a government agency.  See In re UnumProvident Corp. Sec. Litig., 396 F. Supp. 2d 858, 876-77 (E.D. Tenn. 2005) (taking judicial notice of letter decisions of a government agency); see also Bradfield v. Corr. Med. Servs., 2008 WL 5685586, at *4 (W.D. Mich. 2008) ("'[J]udicial notice of historical documents, documents contained in the public record and reports of administrative bodies is proper' and the court may consider such documents without converting a motion to dismiss into a motion for summary judgment[.]" (quoting Menominee Tribe v. Thompson, 161 F.3d 449, 456 (7th Cir. 1998))).

As to the Canonical Statutes of Ascension Health Ministries (Defs.' Ex. C) and the Canonical Bylaws of Ascension Health Ministries (Defs.' Ex. E), the Court may take

11

judicial notice of these documents because they are government documents within the category of "sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The same is true of the Ascension Health Ministries annual reports to the Vatican (Defs.' Ex. D & Ex. AA).  The Holy See is the government of the Roman Catholic Church, and the Vatican City State is a sovereign, independent territory.

Finally, the Court may take judicial notice of the Ethical and Religious Directives for Catholic Health Care Services. (Defs.' Ex. P).  This is a publication promulgated by the United States Council Conference of Bishops.  The Ethical and Religious Directives are widely disseminated and must be followed by all Catholic Health Organizations.  As the Ethical and Religious Directives are from a source whose accuracy cannot reasonably be questioned, the Court may take judicial notice of this document.  The Ethical and Religious Directives may also be considered as plaintiff refers to and relies on them in the CAC.  See Doc. 1 at ¶ 107.

In sum, all of the documents in the record are documents which are either referenced in the CAC, essential to plaintiff's claims, or contain subject matter of which the Court may take judicial notice.

## VI.  Analysis

### A.  Background

#### 1.  The Legislative History

Important to the Court's decision is an understanding of the legislative history of the church plan exemption.  As originally enacted in 1974, ERISA exempted only churches and church agencies from ERISA's coverage.  The IRS read this original

12

exemption narrowly to include only church organizations if they were focused on worshipful or priestly activities.  See I.R.S. Gen. Couns. Memo 37266, 1977 WL 46200 (Sept. 22, 1977).  With the support of a broad-based coalition of religious organizations, Congress retroactively amended and expanded the church plan exemption in § 407 of the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA").  See Pub. L. No. 96-364, § 407, 94 Stat. 1208 (1980).

The amended "church plan" exemption is codified at ERISA § 3(33), 29 U.S.C. § 1002(33).  As set forth above, § 3(33) provides that "[t]he term "church plan" means a plan established and maintained . . . for its employees (or their beneficiaries) by a church."  ERISA (33)(C)(I) further provides that a "church plan" as defined in subparagraph (A) "includes a plan maintained by an organization, whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church . . .  if such organization is controlled by or associated with a church . . .."  ERISA § 3(33)(C)(I) (emphasis added).


The change in the statutory language in 1980 broadened the exemption to include organizations that were affiliated with churches, such as hospitals or schools.  In other words, it moved beyond just permitting a church to establish a church plan.  See, e.g., 125 Cong. Rec. 10052 (May 7, 1979) (co-sponsor Senator Talmadge) (noting organizations that care for the sick and needy or provide instruction can be essential to a church's mission and should fall under the exemption) and 126 Cong. Rec. 20180 (July 29, 1980) (Senator Javits) (noting exemption is being expanded to schools and

13

other church-related institutions) (cited and relied on in IRS General Counsel Memo 39007, 1983 WL 197946 at *6 n.1 (Nov. 2, 1983)).  Moreover, Congress has amended ERISA many times over the last 30 years without changing seeking to change this construction.

### 2.  IRS Rulings

Also important is that the "church plan" exemption is codified in parallel form in the Internal Revenue Code ("IRC") at § 414(e), 26 U.S.C. § 414(e).  The IRS construed and applied the "church plan" exemption shortly after the 1980 revision.  In IRS General Counsel Memo 39007, 1983 WL 197946 (Nov. 2, 1983), the IRS recognized that its "worshipful activity" requirement had been legislatively overruled and that the "church plan" exemption now includes plans sponsored by non-profit organizations that are "controlled by or associated with a church," which the IRS memorandum applied to include hospitals operated by Roman Catholic religious orders.  Id. at *4 to *6.

The IRS has followed this rule for more than 30 years.  The IRS memorandum imposes two requirements for a plan to qualify for the exemption.  First, the organization sponsoring the plan must be controlled by or associated with a church.  Under the statutory language, this control or association results in the organization's employees being deemed employees of the church.  Id. at *4. Second, the plan must be administered by an organization (I) whose primary function is to administer the plan and (ii) that is controlled by or associated with the church.  The IRS specifically notes that an administrative committee of the plan satisfies this requirement.  Id. at *5.

The IRS has concluded that both the Ascension Health Pension Plan (f/k/a the Daughters of Charity Pension Plan) and the St. John Health Pension Plan are "church

14

plans" exempt from ERISA.  See Doc 23-2, Exh. L. IRS Private Letter Ruling (July 8, 1993) (Ascension Health); Doc. 47-5, Exh. Y, IRS Private Letter Ruling (March 16, 1991) (St. John Health).

Following briefing on the motions, Ascension submitted a notice of supplemental authority (Doc. 68), attached to which is the IRS's February 18, 2014 letter favorably determining that the Ascension Health Pension Plan meets the tax qualification requirements of the Internal Revenue Code applicable to "church plans."  See Exhibit A to Doc. 68, IRS Determination Letter, dated February 18, 2014.  The letter states that it "is based solely on [Ascension's] assertion that the plan is entitled to be treated as a church plan under section 414(e) of the Internal Revenue Code[,]."

In addition to the Private Letter Rulings, the IRS has approved the form of the plans as meeting the tax qualification requirements of the IRC applicable to "church plans."  See Doc. 23-3, Exh. M, IRS Determination Letter (Sept. 25, 2009) (Ascension Health); Doc. # 47-4, Exh. X, IRS Determination Letter (Sept. 12, 2012) (St. John Health).

IRS private letter rulings, while not binding, are entitled to deference.  United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 220 (2001) (noting IRS ruling reflecting agency's longstanding interpretation that is reasonable "attracts substantial judicial deference"); Constantino v. TRW, Inc., 13 F.3d 969, 981 (6th Cir. 1994) (noting IRS rulings can be "persuasive authority."); see also, e.g., Humphrey v. Sisters of St. Francis Health Services, 979 F. Supp. 781, 786 (N.D. Ind. 1997) (relying on IRS determination letter as evidence of church plan status).  This is particularly so where the IRS rulings, in the Court's view, are consistent with the text of the statute.

15

### 3.  Case law

Several courts have agreed that plans sponsored by non-church organizations, such as hospitals, can qualify for the "church plan" exemption but have followed a simpler rule. Specifically, courts require only that the non-profit organization sponsoring the plan be controlled by or associated with a church.   E.g., Lown v. Cont'l Cas. Co., 238 F.3d 543, 547 (4th Cir. 2001) (concluding that "a plan established by a corporation associated with a church can still qualify as a church plan"); Catholic Charities of Maine v. City of Portland, 304 F. Supp. 2d 77, 84-85 (D. Maine 2004) (same); Welsh v. Ascension Health, 3:08CV348/MCR/EMT, 2009 WL 1444431, at *7 (N.D. Fla. May 21, 2009) (finding administration of the plan by a separate committee is not required); Thorkelson v. Publ'g House of the Evangelical Lutheran Church, 764 F. Supp. 2d 1119, 1125-29 (D. Minn. 2011).

However, there is recent case law to the contrary.  In Rollins v. Dignity Health, No. 13-01450 (N.D. Cal. Dec. 12, 2013), the district court concluded that only a church can establish a "church plan" under ERISA § 3(33), 29 U.S.C. § 1002(33).  The district court determined that IRS and the prior cases cited above erred in reading that text of the statute.  Similarly, in Kaplan v. Saint Peter's Healthcare, No. 13-2941 (D.N.J. March 31, 2014), the district court held that only a church may establish a church plan. As explained below, the Court does not find either case persuasive.

### B.  Decision

16

### 1.  A Church Plan Need Not be Established by a Church

The church plan exemption is found under 29 U.S.C. § 1002(33).  That section is

divided into four parts, A-D.  In section (A), a church plan is defined as follows:

> (33)(A) The term "church plan" means a plan established and maintained (to the extent required in clause (ii) of subparagraph (B)) for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of Title 26.

Section B excludes certain plans from the definition of church plan:

> (B) The term "church plan" does not include a plan–
> (I) which is established and maintained primarily for the benefit of employees (or their beneficiaries) of such church or convention or association of churches who are employed in connection with one or more unrelated trades or businesses (within the meaning of section 513 of Title 26), or
> (ii) if less than substantially all of the individuals included in the plan are individuals described in subparagraph (A) or in clause (ii) of subparagraph (C) (or their beneficiaries).

Section C provides that an organization other than a church can maintain a church plan:

> (C) For purposes of this paragraph–
> (I) A plan established and maintained for its employees (or their beneficiaries) by a church or by a convention or association of churches **includes a plan maintained by an organization,** whether a civil law corporation or otherwise, the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches**, if such organization is controlled by or associated with a church or a convention or association of churches**.

(Emphasis added).  The term "associated with a church or convention or association of

churches" means an organization that "shares common religious bonds and convictions

with that church or convention or association of churches."  29 U.S.C. § 1002(33)(C)(iv).

Section D provides the church an opportunity to cure any failure to meet the above

requirements.

The rub in this, and similar cases, is the interplay between section (A) and section (C).  Under section (A): "The term "church plan" means a plan established and maintained . . . for its employees (or their beneficiaries) by a church or by a convention or association of churches which is exempt from tax under section 501 of title 26."  This section clearly provides that a plan established and maintained by a church is a church plan.  However, the statute says more than is just in section (A).  Section (C) exempts plans that are maintained by an organization controlled by or associated with a church and whose primary purpose is funding or administering the plan.

In <u>Dignity Health</u> and <u>Saint Peters</u>, the district courts interpreted section (A) as a gatekeeper of section (C).  That is, these courts concluded that section (A) sets the standard–only a church can establish a church plan– and section (C) only describes how a plan under section (A) can be maintained.  The problem with this interpretation is that section (C) uses the word "includes" not "subject to."  Section (C) says that "A plan established and maintained . . . by a church **includes** a plan [meeting the requirements of section (C)(I).  As Ascension puts it "under the rules of grammar and logic, A is not a 'gatekeeper' to C; rather if A is exempt and A includes C, then C is also exempt."  (Doc. 71 at p. 2).  This is how the Court interprets section (C).  In other words, a church plan may include a plan that meets the requirements of section (C).  Section (C) requires that the plan maintained by an organization that is either (1) controlled by or (2) associated with a church or convention of churches.  To find otherwise would render section (C) meaningless.

Important to this conclusion is the legislative history.  Congress added section (C) in 1980 which plainly broadened the exemption to include organizations controlled

18

by or associated with churches.  In the section, Congress provided that "church plans" include the plans that qualify under Section (A) **and** those that qualify under Section (C)(I).  Thus, a plan of the Archdiocese of Detroit can be a "church plan" under section (A) since it is established by the Roman Catholic Church.  So too can a plan established by another organization provided that organization is "controlled by or associated with a church."  Each section is required for each type of plan.  This construction has been consistently followed by the IRS and gives effect to both of the sections.

In section (A) Congress provided that "[t]he term "church plan" means a plan established and maintained . . . for its employees (or their beneficiaries) by a church . . . ."  In section (C)(I) Congress repeats this precise same language—that "a plan established and maintained for its employees (or their beneficiaries) by a church"—to explain that such a plan "includes a plan" that meets the remaining requirements of Section (C)(I).  Under the plain language the plan "is established and maintained by a church" if it meets the other requirements of Section (C)(I).

Thus, as amended in 1980, the church plan exemption includes plans sponsored by church-affiliated organizations, such as hospitals or schools, if these plans are administered by plan committees (1) whose principal function is to administer the plan, (2) if the plan committee is controlled by or associated with a church.  As will be explained, the plans meet these requirements.

### 2.  The Plans are Church Plans

Both the Ascension Health Pension Plan and the St. John Health Pension Plan

19

are church plans.  Both plans are administered by the Ascension Health Pension

Committee.  See Doc. 23 & 23-1, Exh. K, Ascension Health Pension Plan §§ 2.6, 10.1 &

10.3; Doc. 47-3, Exh. W, St. John Health Pension Plan, §§ 2.5, 9.1 & 9.3.  The

Ascension Health Pension Committee is appointed by the Chair of the Board of

Trustees of Ascension Health with the approval of the Board of Trustees.  See Doc. 23,

Exh. K, Ascension Health Pension Plan, § 2.63.  The issue is whether Ascension is

controlled by and/or associated with the Roman Catholic Church.

### a.  Ascension is Controlled By the Roman Catholic Church

A plan qualifies for the "church plan" exemption if the organization maintaining it

is either controlled by or associated with a church.  Both the IRS regulations and the

courts have used the common sense definition of organizational control:  the ability of

church officials to appoint the majority of the trustees or directors of an organization.

See 26 C.F.R. § 1.414(c)-5; see also, e.g., Lown v. Cont'l Cas. Co., 238 F.3d 543,

547-48 (4th Cir. 2001) (citing and applying IRS regulation); Catholic Charities of Maine

v. City of Portland, 304 F. Supp. 2d 77, 85 (D. Maine 2004) (church control over the

appointment of the majority of the non-church organization's officers or Board of

Directors).

Here, the control of the Roman Catholic Church flows downward through

Ascension Health Ministries, an entity created within the Roman Catholic Church, to

Ascension and its system entities, including St. John Health, as described below.

First, Ascension Health Ministries is an organization within the Roman Catholic

Church, created by the Roman Catholic Church's canon law as a "Public Juridic

Person."  See Doc. 22-2, Exh. A, Vatican Decree.  A "Public Juridic Person" is an

organization afforded the right to own and operate real and personal property under the auspices of the Church.  Singer, Lawrence E., <u>Realigning Catholic Health Care: Bridging Legal and Church Control in a Consolidating Market</u>, 72, TUL. L. REV. 159, 218-19 (1997) (citing canon law).  Currently five Catholic Religious Orders - Daughters of Charity, Congregation of St. Joseph, Sisters of St. Joseph of Carondelet, Alexian Brothers, and Sisters of the Sorrowful Mother - are the "Participating Entities" that appoint the members of Ascension Health Ministries.  <u>See</u> Doc. 22-6, Exh. E, Ministries' Canonical Bylaws, Article IV.  Seven of the 10 individual members are members of the five religious orders (i.e. brothers and sisters).  Doc. 50-2, Exh. AA, 2013 Ascension Health Ministries Annual Report, pp. 12-13, 23.  These members have religious obligations imposed by the canonical statutes to maintain the Roman Catholic Church's control over Ascension and its System Entities, so that Ascension and the System Entities may remain a healing ministry carrying out the apostolic works of the Roman Catholic Church.  <u>See</u> Doc. 22-4, Exh. C. Ministries Canonical Statutes, id., Article IV, parts 2 & 4.

As to Ascension Health Alliance, it is the civil law organization created under Missouri non-profit corporate law to oversee Ascension Health and its System Entities so that the canonical responsibilities of Ascension Health Ministries may be carried out. Control between Ascension Health Ministries and Ascension Health Alliance is maintained through the canonical members of Ascension Health Ministries who also serve as the civil law members  of Ascension Health Alliance.  <u>See</u> Doc. 22-8, Exh. G., Ascension Health Alliance Bylaws, § 2.3 & 2.8.  Ascension Health Ministries has organizational control over Ascension Health Alliance, including the power (1) to appoint

21

and remove Ascension Health Alliance's directors, board chair, and CEO; (2) to approve the corporate documents, the bylaws and articles of incorporation of Ascension Health Alliance; (3) to approve and ensure compliance with Ascension Health Alliance's philosophy, purpose, and mission to be a health ministry of the Roman Catholic Church; and (4) to approve the sale or alienation of assets and the incurrence of debt by Ascension Health Alliance, all subject to the Roman Catholic Church's canon law requirements.  See id., §§ 2.8, 4.2.

As to Ascension Health.  Ascension Health Alliance is the sole member of Ascension Health and has the following powers over Ascension Health: (I) to approve, assure compliance with, change and interpret its philosophy, mission and values; (ii) to approve the articles and bylaws; (ii) to appoint or remove members of board of trustees and its chair; (iii) to approve alienation of assets as required by canon law; and (iv) to approve sale of assets and the strategic, financial and operating plan.  Doc. 22-3, Exh. B, Ascension Health's Articles of Incorporation, Art. V, §§ 4.1, 5.2.  Ascension Health Ministries, acting through its members, also has the following direct powers over Ascension Health: (I) to ratify appointment or removal of trustees and its chair; and (ii) to approve alienation of assets as required by the Roman Catholic Church's canon law. Id.

Regarding, St. John Health, it is a subsidiary of Ascension Health.  Ascension Health is the sole member of St. John Health.  See Doc. 47-1, Exh. U, Articles of Incorporation of St. John Health, Art. III.E.  Ascension Health has the following powers over St. John Health: (I) to approve acquisition of entities and subject to the Roman Catholic Church's canonical requirements, approve the sale or divesture of assets; (ii) to approve governing documents of St. John Health or any subsidiary; (iii) to appoint or

22

remove members of board of trustees and its chair, in consultation with its canonical sponsor, now Ascension Health Ministries; and (iv) to approve incurrence of debt and the transfer of assets.  Id. Art. VI.

Finally, the articles of incorporation and bylaws of each entity affirm its obligation to act in conformity with the teachings of the Roman Catholic Church, including the Ethical and Religious Directives for Catholic Health Care Services.  In short, through Ascension Health Ministries, a Public Juridic Person, the Roman Catholic Church maintains control over Ascension and St. John Health.

### b.  Ascension is Associated with the Roman Catholic Church

The record shows multiple ways in which the Ascension is associated with the Roman Catholic Church.  First, Ascension is listed in the Official Catholic Directory. See Doc. 22-9, Exh. H (listing the three named entity Defendants, Ascension Health Alliance, Ascension Health, and Catholic Health Investment Management Company ("CHIMCO")).  The same applies to Ascension Health's System Entity, St. John Health. See Doc.47-2, Supp. Exh. V.

An entity is listed in the directory only if a bishop of the Roman Catholic Church determines the entity is "operated, supervised, or controlled by or in connection with the Roman Catholic Church."  See Doc. 28-9, Pl.'s Opp., Ex. 8 (U.S. Catholic Bishops' Guidelines) p. 17.  Courts view the Official Catholic Directory listing as a public declaration by the Roman Catholic Church that an organization is associated with the Church.  See, e.g., Catholic Charities of Maine v. City of Portland, 304 F. Supp. 2d 77, 85-86 (D. Me. 2004) (referring to, inter alia, the Official Catholic Directory as evidence that Catholic Charities' health benefit plans qualify for ERISA church-plan status);

23

Hartwig v. Albertus Magnus Coll., 93 F. Supp. 2d 200, 202-203 (D. Conn. 2000) (explaining that "the Official Catholic Directory . . . is the definitive compilation of Roman Catholic institutions in the United States").  The IRS has also relied on the Official Catholic Directory to determine whether a plan sponsor is associated with the Roman Catholic Church.  See e.g., IRS General Counsel Memo 39007, 1983 WL 197946 at *4 (Nov. 2, 1983).  In short, the Roman Catholic Church has publicly declared Ascension to be a Catholic organization in the Official Catholic Directory.

Additionally, there are several public documents and public actions that indicate that the Roman Catholic Church has included Ascension and its system entities, including St. John, within the Church's religious community.  First, the health systems and property that have been joined together into Ascension Health were originally health systems of religious orders of the Roman Catholic Church.  See, e.g., Doc. 49-2 (demonstrative exhibit of organizational history of Ascension Health); Doc. 22-5, Exh. D, 2011 Ascension Health Ministries Annual Report, pp. 5-6, 15-18. Members of these Religious Orders are members of and sit on boards of the organizations within Ascension Health's system.  See, e.g., Doc. 50-2, Exh. AA, 2013 Ascension Health Ministries Annual Report, pp. 12-13, 23.

Second, the bishops of the Roman Catholic Church oversee Ascension's facilities operating within their diocese on compliance with Roman Catholic teachings, worship and pastoral care.  See Doc. 22-4, Exh. C, Ascension Health Ministries Canonical Statutes, Article VI; Doc.50-2, Exh. AA, 2013 Ascension Health Ministries Annual Report, p. 29.

Third, Ascension Health Ministries annually reports to the Vatican on how

24

Ascension Health and its subsidiaries are meeting Ascension's religious obligations to be a healing ministry of the Roman Catholic Church.  See Doc. 22-4, Exh. C, Ascension Health Ministries Canonical Statutes, Article V.1.a; Doc. 50-2, Exh. AA, 2013 Ascension Health Ministries Annual Report; Dkt. # 22-5, Exh. D, 2011 Ascension Health Ministries Annual Report.

Plaintiff casts doubt on whether Ascension is controlled by the Roman Catholic Church, alleging in the CAC that although Ascension shares "some religious convictions" with the Roman Catholic Church but claims that the Roman Catholic Church and Ascension do not share sufficient "common religious bonds and convictions."  Doc. 1, CAC at  ¶ 106-07.  Plaintiff alleges that the following are violations of the Roman Catholic Church's religious doctrine and therefore indicate Ascension is not controlled by the church:  (1) hiring and treatment of non-Catholics; (2) pastoral support for non-Catholic patients; (3) investment in alleged high-risk venture capital projects; and (4) performing contraceptive sterilization procedures.  Id. at ¶107.

Even assuming these allegations are true, this argument regarding religious orthodoxy is prohibited by the Constitution.  The First Amendment creates a protected zone for churches to decide these issues of religious doctrine free from government intrusion.  This protected zone includes:  (1) a church's law and doctrine, Serbian Eastern Orthodox Diocese v.  Milivojevich, 426 U.S. 696, 713 (1976); (2) a church's religious mission, Hernandez v. Comm'r Inter. Rev., 490 U.S. 680, 699 (1989); Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos, 483 U.S. 327, 336 & n.14 (1987); and (3) a church's polity, administration, and community. Milivojevich, 426 U.S. at 709-714.

25

Plaintiff's allegations are grounded in theology.  The First Amendment "plainly forbids" courts from inquiring into this departure-from-doctrine claim.  See Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, 393 U.S. 440, 606-07 (1969); NLRB v. Catholic Bishops, 440 U.S. 490, 502 (1979) (inquiry into whether a high school was "completely religious" infringed First Amendment); University of Great Falls v. NLRB, 278 F.3d 1335, 1341-43 (D.C. Cir. 2002) (same for inquiry into whether college had a "substantial religious character").

### 3.  Plaintiff's Constitutional Claim

As to plaintiff's "contingent" constitutional claim, she alleges that to the extent the statute is interpreted to permit organizations associated with a church to claim church plan status, it violates the First Amendment's Establishment Clause.  Plaintiff says that this interpretation will require religiously intrusive inquiries to determine association.

Ascension says that plaintiff has failed to allege that she suffered any injury-in-fact as to her constitutional claim and therefore does not have standing to pursue it.   Ascension also argues that the plans pass constitutional muster.

Ascension's standing argument has merit.  To show Article III standing, a party must alleged she (1) suffered an "injury in fact" (2) that is causally connected to the conduct complained of (3) that will be redressed by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  See also  Smith v. Jefferson Cnty. Bd. Of Sch. Commr's, 641 F.3d 197, 206-10 (6th Cir. 2011) (applying test to an Establishment Clause challenge).

Here, there are no specific allegations in the CAC to suggest plaintiff would have a better funded pension if the Court were to strike down the church plan exemption

provisions of ERISA, or the exemption as applied to Ascension. Thus, as asserted, the CAC fails to show plaintiff has suffered a concrete harm, or that the relief she seeks would redress an alleged injury. The allegations related to plaintiff's constitutional claim are found in paragraphs 204-206. A review of these allegations reveals that they are simply generic recitations of perceived harms. The CAC does not allege any specific or concrete injury suffered by plaintiff as a consequence of being a participant in a church plan. The ERISA allegations, which are incorporated by reference, are of the same order. The allegations are not specific as to harms allegedly suffered by plaintiff as a result of the alleged ERISA violations. See, e.g., <u>Hollingsworth v. Perry</u>, 2013 WL 3196927 at *7 (U.S. June 26, 2013) (standing requires plaintiff to suffer injury in a "personal and individual way"). As such, the CAC are currently plead does not sufficiently allege standing to enable plaintiff to bring a constitutional challenge. This claim must be dismissed.

## VII.  Conclusion

As the Court said at oral argument, the term church plan should be in quotations as the statutory exemption is broader than to over just churches. A church plan is a plan that is (1) established by a church or (2) established by an organization that is controlled by or associated with a church. The St. Johns and Ascension Health pension plans are the latter. As such, the plans are properly exempt from ERISA's requirements. Plaintiff's ERISA based claims therefore fail to state viable claims for relief. Plaintiff's contingent constitutional claim fails for lack of standing.

Accordingly, for the reasons stated above, defendants' motion to dismiss is GRANTED. Plaintiff's motions to disregard exhibits are DENIED. The CAC is

27

dismissed.  This case is CLOSED.

SO ORDERED.


**CODA**

The Court recognizes the considerable number of people, like plaintiff, are employed in the health care industry and not in religious related or directed duties. However, the pension plans in which they are participants are church managed plans. As such, they are exempt from ERISA's coverage and protections.  This is so because the health care entity with whom they are employed is in fact controlled by and associated with a church.  In this case, Ascension Health's managerial system has a direct line to the Roman Catholic Church in the Vatican.

While plaintiff may not have the benefit of ERISA's protections, the pension plans are wholly unregulated.  They are governed by state law.  See Cassidy v. Akzo Nobel Salt, Inc., 308 F.3d 613, 615 (6th Cir. 2002) ("Interpreting a non-ERISA contract claim requires federal courts to look only to state law principles . . ." (citing Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938))).

The church exemption is a congressional choice of historic proportion.  And while it may appear to be an irrational distinction, it is a distinction mandated by law.

As noted above, the record is simply insufficient to allow for a constitutional challenge.

That such a challenge may have merit is for another day and another lawsuit.


S/Avern Cohn
UNITED STATES DISTRICT JUDGE

Dated: May 9, 2014
        Detroit, Michigan


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, May 9, 2014, by electronic and/or ordinary mail.


S/Sakne Chami
Case Manager, (313) 234-5160

29