## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

MARILYN OVERALL, on behalf of herself, individually, and on behalf of all others similarly situated,

        Plaintiff,

v.

ASCENSION HEALTH, et al.

        Defendants.

Civil No. 13-cv-11396-AC-LJM

Hon. Avern Cohn

## PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND CERTIFICATION OF SETTLEMENT CLASS

Plaintiff Marilyn Overall ("Named Plaintiff"), by and through by Keller Rohrback L.L.P., Cohen Milstein Sellers & Toll, PLLC, and Stephen F. Wasinger PLC ("Class Counsel"), respectfully moves the Court for an Order granting final approval of the Class Action Settlement Agreement, and final certification of the Class pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or 23(b)(2), and for entry of the Order and Final Judgment.[1]

DATED August 17, 2015.

s/ Lynn L. Sarko
Lynn L. Sarko
Havila C. Unrein
Matthew M. Gerend
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900 / Fax: (206) 623-3384
Email: lsarko@kellerrohrback.com

---

[1] Filed contemporaneously herewith is Plaintiff's Motion for Awards of Attorneys' Fees, Expenses and Incentive Fee.

1

hunrein@kellerrohrback.com
mgerend@kellerrohrback.com

Ron Kilgard
Laurie Ashton
KELLER ROHRBACK, L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088 / Fax: (602) 248-2822
Email:  rkilgard@kellerrohrback.com
lashton@kellerrohrback.com

Karen L. Handorf
Michele C. Yau
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
Tel: (202) 408-4600 / Fax: (202) 408-4699
Email:  khandorf@cohenmilstein.com
myau@cohenmilstein.com

Stephen F. Wasinger
STEPHEN F. WASINGER PLC
300 Balmoral Centre
32121 Woodward Avenue
Royal Oak, MI  48073-0999
Tel: (248) 544-1500 / Fax: (248) 544-1501
Email: sfw@sfwlaw.com
ID: P25963

Of Counsel:
Bruce F. Rinaldi
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C. 20005
Tel: (202) 408-4600 / Fax: (202) 408-4699
Email:  brinaldi@cohenmilstein.com
msmith@cohenmilstein.com

**Attorneys for Plaintiff**

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| MARILYN OVERALL, on behalf of herself, individually, and on behalf of all others similarly situated, | ) ) ) | Civil No. 13-cv-11396-AC-LJM |
| | ) | Hon. Avern Cohn |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| ASCENSION HEALTH, et al. | ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

| | |
|---|---|
| Lynn L. Sarko<br>Havila C. Unrein<br>Matthew M. Gerend<br>KELLER ROHRBACK L.L.P.<br>1201 Third Avenue, Suite 3200<br>Seattle, WA 98101<br>Tel: (206) 623-1900<br>Email: lsarko@kellerrohrback.com<br>hunrein@kellerrohrback.com<br>mgerend@kellerrohrback.com | Karen L. Handorf<br>Michelle C. Yau<br>COHEN MILSTEIN SELLERS &<br>TOLL, PLLC<br>1100 New York Avenue, N.W.<br>Suite 500, West Tower<br>Washington, D.C.  20005<br>Tel: (202) 408-4600<br>Email:  khandorf@cohenmilstein.com<br>myau@cohenmilstein.com |
| Ron Kilgard<br>Laurie Ashton<br>KELLER ROHRBACK, L.L.P.<br>3101 N. Central Avenue, Suite 1400<br>Phoenix, AZ 85012<br>Tel: (602) 248-0088<br>Email:  rkilgard@kellerrohrback.com<br>lashton@kellerrohrback.com | Stephen F. Wasinger<br>STEPHEN F. WASINGER PLC<br>300 Balmoral Centre<br>32121 Woodward Avenue<br>Royal Oak, MI  48073-0999<br>Tel: (248) 544-1500<br>Email: sfw@sfwlaw.com<br>ID: P25963 |

**Counsel for Plaintiff**

# TABLE OF CONTENTS

CONCISE STATEMENT OF THE ISSUES PRESENTED: ................................ i

CONTROLLING OR MOST APPROPRIATE AUTHORITY: .......................... ii

I.     INTRODUCTION ...................................................................1

II.    DISCUSSION ........................................................................2

    A.     Procedural History ........................................................2

    B.     Settlement Negotiations ..................................................4

    A.     Terms of the Settlement Agreement ..................................5

    C.     Reasons for the Settlement ..............................................7

    D.     Preliminary Approval .....................................................7

    E.     Notice to the Class and the Relative Lack of Objections ..................8

III.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE
       SETTLEMENT .......................................................................9

    A.     Standard of Review ........................................................9

        1.     There Was and Is No Fraud or Collusion in the
            Settlement ..........................................................9

        2.     The Complexity, Expense and Likely Duration of
            the Litigation Favor Settlement ...........................10

        3.     The Absence of Formal Discovery does not
            Disfavor Settlement .............................................11

        4.     The Likelihood of Success on the Merits Weighed
            Against the Consideration Offered in the Settlement
            Favors Approval .................................................12

        5.     The Opinions of Experienced Counsel Weigh in
            Favor of Approval ...............................................15

        6.     The Reaction of Absent Members of the Settlement
            Class ................................................................16

B.    The Form and Methods of Notice Employed Satisfy Rule 23 and Due Process ................................................................18

C.    Certification of the Settlement Class Is Appropriate ......................20

    1.    The Requirements of Rule 23(a) Are Easily Satisfied ................................................................20

    2.    The Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2) ................................................22

        a.    Individual actions would create inconsistent adjudications or be dispositive of the interests of absent members .......................................................22

        b.    Defendants have acted on grounds generally applicable to the Class and relief for the Class as a whole is appropriate ...........................................23

    3.    The Requirements of Rule 23(g) Are Met ............................24

II.    CONCLUSION ........................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)........................................................................20

*Aro Corp. v. Allied Witan Co.*,
  531 F.2d 1368 (6th Cir. 1976), *cert. denied*, 429 U.S. 862 (1976).....................17

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*,
  338 F.3d 755 (7th Cir. 2003)................................................................23

*Bublitz v. E.I. du Pont de Nemours & Co.*,
  202 F.R.D. 251 (S.D. Iowa 2001) ......................................................23

*Chavies v. Catholic Health E.*,
  No. 13-1645 (E.D. Pa. Mar. 28, 2014) ...........................................13

*Foe v. Cuomo*, 700 F. Supp.
  107 (E.D.N.Y. 1988), *aff'd*, 892 F.2d 196
  (2d Cir. 1989), *cert. denied*, 498 U.S. 972 (1990) ...............................19

*Granada Invs., Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992)..........................................................18

*Griffin v. Flagstar Bancorp.Inc.*,
  No. 10-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013)..........................12

*Hans v. Tharaldson*,
  No. 05-115, 2010 WL 1856267 (D.N.D. May 7, 2010)....................................20

*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996)..............................................................21

*In re Cardizem*,
  218 F.R.D. 508 (E.D. Mich. 2003).........................................................9, 16, 18

*In re CMS Energy ERISA Litig.*,
  225 F.R.D. 539 (E.D. Mich. 2004).........................................................20, 22

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004)..........................................................19

*In re Nortel Networks Corp. "ERISA" Litig.*,
  No. 03-01537, 2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009) ........................20

*In re Telectronics Pacing Sys., Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) ........................................................10, 16

*IUE-CWA v. Gen. Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006).............................................................10, 15

*Kaplan v. Saint Peter's Healthcare Sys.*,
  No. 13-2941, 2014 WL 1284854 (D.N.J. Mar. 31, 2014)..............................3, 13

*Kaplan v. Saint Peter's Healthcare Sys.*,
  No. 15-1172 (3d Cir. Jan. 20, 2015)................................................................13

*Lann v. Trinity Health Corp.*
  (D. Md. Feb. 24, 2015) ...................................................................................13

*Medina v. Catholic Health Initiatives*,
  No. 13-01249, 2014 WL 4244012 (D. Colo. Aug. 26, 2014)............................13

*Mezyk v. U.S. Bank Pension Plan*,
  No. 09-384, 2011 WL 601653 (S.D. Ill. Feb. 11, 2011) ..............................22, 23

*Moore v. Comcast Corp.*,
  268 F.R.D. 530 (E.D. Pa. Apr. 6, 2010) ...........................................................20

*Moulton v. U.S. Steel Corp.*,
  581 F.3d 344 (6th Cir. 2009)...........................................................................2, 9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)..........................................................................................18

*Newby v. Enron Corp.*,
  394 F.3d 296 (5th Cir. 2004).............................................................................11

*Overall v. Ascension Health*,
  23 F. Supp. 3d 816 (E.D. Mich. 2014) .............................................................13

*Rankin v. Rots*,
  220 F.R.D. 511 (E.D. Mich. 2004).......................................................17, 20, 21

*Rollins v. Dignity Health*,
  19 F. Supp. 3d 909 (N.D. Cal. 2013)..............................................................3, 13

iv

*Rollins v. Dignity Health*,
   No. 15-15351 (9th Cir. Feb. 26, 2015) ..........................................................3, 13

*Sheick v. Auto. Component Carrier LLC*,
   No. 09-14429, 2010 WL 4136958 (E.D. Mich. Oct. 18, 2010).....................9, 11

*Shirk v. Fifth Third Bancorp*,
   No. 05-049, 2008 WL 4425535 (S.D. Ohio Sept. 30, 2008)..............................20

*Smith v. Provident Bank*,
   170 F.3d 609 (6th Cir. 1999)..............................................................................23

*Stapleton v. Advocate Health Care Network & Subsidiaries*,
   No. 14-01873, 2014 WL 7525481, --- F. Supp. 3d ----
   (N.D. Ill. Dec. 31, 2014) ....................................................................................13

*Stapleton v. Advocate Health Care Network & Subsidiaries*,
   No. 15-1368 (7th Cir. Feb. 25, 2015) ................................................................13

*United States v. Latham*,
   54 Fed. App'x. 441 (6th Cir. 2002) ....................................................................18

*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983)..............................................................................15

**Statutes**

Class Action Fairness Act ...........................................................................................2

Employee Retirement Income Security Act of 1974 .......................................*passim*

ERISA § 409(a), 29 U.S.C. § 1109(a)......................................................................23

ERISA § 502(a), 29 U.S.C. § 1132(a)......................................................................23

ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2)............................................................23

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)............................................................23

**Rules**

6 Cir. R. 33 .............................................................................................................4, 10

Fed. R. Civ. P. 23......................................................................................18, 20, 22, 24

Fed. R. Civ. P. 23(a) ................................................................. 7, 20, 22

Fed. R. Civ. P. 23(a)(1) ........................................................................ 20

Fed. R. Civ. P. 23(a)(2) ........................................................................ 21

Fed. R. Civ. P. 23(a)(3) ........................................................................ 21

Fed. R. Civ. P. 23(a)(4) ........................................................................ 21

Fed. R. Civ. P. 23(b) .......................................................................... 7, 20

Fed. R. Civ. P. 23(b)(1) ................................................................... *passim*

Fed R. Civ. P. 23(b)(1)(A) .................................................................... 22

Fed. R. Civ. P. 23(b)(1)(A) .............................................................. 20, 22

Fed. R. Civ. P. 23(b)(1)(B) .............................................................. 20, 22

Fed. R. Civ. P. 23(b)(2) ................................................................... *passim*

Fed. R. Civ. P. 23(c)(2) ........................................................................ 19

Fed. R. Civ. P. 23(c)(2)(A) ................................................................... 19

Fed. R. Civ. P. 23(e) ............................................................................. 8

Fed. R. Civ. P. 23(e)(1) ........................................................................ 19

Fed. R. Civ. P. 23(e)(2) .......................................................................... 9

Fed. R. Civ. P. 23(g) ............................................................................ 24

**Other Authorities**

John Langbein et al., PENSION & EMPLOYEE BENEFIT LAW (5th ed. 2010).......... 14, 15

## CONCISE STATEMENT OF THE ISSUES PRESENTED:

1.      Whether the Court should grant final approval of the Class Action Settlement Agreement.

2.      Whether the Court should grant final certification of the preliminarily certified class pursuant to Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2).

**CONTROLLING OR MOST APPROPRIATE AUTHORITY:**

Pursuant to Local Rule 7.1(c)(2), Plaintiff lists the following authority as the most appropriate for the relief sought in her motion:

Fed. R. Civ. P. 23

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344 (6th Cir. 2009).

# I.  INTRODUCTION

Plaintiff Marilyn Overall ("Named Plaintiff"), by and through her attorneys, respectfully moves the Court for an Order: (1) granting final approval of the Class Action Settlement Agreement[1] ("Settlement" or "Settlement Agreement") described herein and preliminarily approved by the Court on May 11, 2015, ECF No. 88; and (2) granting final certification of the Class pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or 23(b)(2).[2]

The Settlement is an excellent result for the proposed Settlement Class, participants and beneficiaries of the Ascension Plans:[3] It provides for significant Plan provisions which will enhance the retirement security of the members of the Settlement Class, and also provides monetary consideration to the Plans.  The Settlement was reached only after vigorous arm's-length negotiations by experienced counsel with the assistance of a circuit mediator from the Office of the Circuit Mediators for the Sixth Circuit Court of Appeals ("Circuit mediator" or "mediator").

The Parties have fully complied with the terms of the Preliminary Approval Order, including providing notice of the Settlement to the Settlement Class,[4] and

---

[1] Capitalized terms not otherwise defined in this memorandum have the same meaning as ascribed to them in the Settlement Agreement, attached hereto as Exhibit 1 to the Declaration of Lynn L. Sarko and Karen L. Handorf ("Decl." or "Declaration").

[2] Named Plaintiff files the instant Motion contemporaneously with her Motion for Awards of Attorneys' Fees, Expenses and Incentive Fee.

[3] The Ascension Plans ("Plans or Plan") are defined in paragraph 1.14 of the Settlement.

[4] *See* Declaration of Abigail Schwartz For Rust Consulting, Inc., attached to the Declaration as Exhibit 2.

mailing the Class Action Fairness Act ("CAFA") notices to the requisite officials

pursuant to the CAFA statute.[5]  Under the governing standards for evaluating class

action settlements in this Circuit, this Settlement is fair, reasonable, and adequate,

and Named Plaintiff respectfully asks that the Court approve it.  *Moulton v. U.S.*

*Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009).

## II.    DISCUSSION

### A.    Procedural History

While the Court is familiar with the facts of this case, for purposes of Final

Approval, Class Counsel summarizes them for the Court's convenience here.

On March 28, 2013, a putative class action complaint (the "Complaint") was filed in

this Court against Ascension Health and various other defendants alleging violations

of the Employee Retirement Income Security Act of 1974, as amended ("ERISA").

ECF No. 1.  The Complaint was filed by Class Counsel and alleged that Defendants

denied the Plans' participants and beneficiaries the protections of ERISA by

claiming that the Ascension Plans qualified as ERISA exempt "church plans."  The

Complaint alleged that the Plans sponsored by Ascension—a large, non-profit

healthcare entity—did not qualify as ERISA exempt church plans.

Defendants moved to dismiss the Complaint on June 28, 2013.  ECF Nos. 22-

23. The proceedings in connection with the motion to dismiss were extensive. The

Court met with counsel in chambers to discuss the case generally and the motion in

particular and to set out a briefing schedule. ECF No. 34. The briefing consisted not

only of the motion papers on the motion to dismiss itself, but further motion papers

---

[5] *See* Declaration of Benjamin Saper attached to the Declaration as Exhibit 3.

on the propriety of the hundreds of pages of documents submitted by the defense in support of the motion. ECF Nos. 22, 28, 29, 32, 33, 35, 40, 50, 51, 53, 57, 64. By the time of the first oral argument, over 2,200 hundred pages of motion papers and underlying documents had been submitted to the Court.

Oral argument was first held on October 16, 2013. The Court raised several issues at that hearing, requested further briefing on certain issues, and set the matter for further argument. ECF No. 45. The Parties submitted further papers and documents, ECF Nos. 50, 51, and the continued oral argument was held on November 19, 2013.  After several hours of argument, the Court granted the motion from the bench and directed defense counsel to file additional pleadings.

That submission, ECF No. 59, Ex. A, led to still further briefing. ECF Nos. 59, 62, 64. Moreover, while the case was under submission, Judge Henderson decided the *Dignity* case and Judge Shipp the *Saint Peter's* case, each of which dealt with the key issue before the Court – whether an entity other than a church could establish a church plan.[6] This led to further briefing on the significance of those opinions. ECF Nos. 65-72. The Parties also submitted supplemental authorities on other issues presented by the briefing. ECF Nos. 36, 38, 48, 54, 63-1, 65, 70.

Finally, the Court entered its opinion, granting the motion to dismiss in its entirety, on May 9, 2014.  ECF Nos. 73, 77.  Plaintiff timely filed a Notice of Appeal.  ECF No. 78. Plaintiff-Appellant filed her opening brief, Defendants-

---

[6] *Rollins v. Dignity Health* ("*Dignity*"), 19 F. Supp. 3d 909 (N.D. Cal. 2013); *Kaplan v. Saint Peter's Healthcare Sys.* ("*Saint Peter's*"), No. 13-2941, 2014 WL 1284854 (D.N.J. Mar. 31, 2014).

Appellees filed their response, and Plaintiff-Appellant filed her reply.[7]  In addition, five amicus curiae briefs were filed.[8]  After the case was fully briefed, on March 12, 2015, the Sixth Circuit set the case for oral argument. Appeal ECF No. 70.

Upon notice of this proposed settlement, the Sixth Circuit granted the parties' motion to stay the appeal and remand the case to this Court to review and potentially approve the proposed settlement.

**B.    Settlement Negotiations**

Class Counsel were cognizant that there was no guarantee of success in their appeal.  Accordingly, the Parties participated in the mediation program sponsored by the Sixth Circuit, pursuant to Rule 33 of the Sixth Circuit Rules. 6 Cir. R. 33. Following extensive negotiations with the Circuit mediator for over six months, the Parties accepted a final mediator's proposal and an agreement in principle was reached orally.  Decl. ¶ 14.

In the weeks following this preliminary agreement, the Parties engaged in continued negotiations regarding additional terms of the agreement, and then memorialized those terms in a "term sheet." *Id.* ¶ 15.  The mediator received and reviewed all the term sheets, from the first to the last, and discussed all the terms and issues with the Parties, including attorneys' fees.  The Parties notified the Circuit mediator and the Sixth Circuit of the Settlement and moved to stay the appeal and remand to this Court. Appeal ECF No. 71. The Sixth Circuit granted the motion.  Appeal ECF No. 72-2.  The Settlement Agreement now before the Court is a detailed, fleshed out agreement based on the term sheet that was executed on May

---

[7] *Overall v. Ascension Health*, No. 14-1735 (6th Cir.) (Appeal ECF Nos. 31, 46, 60).
[8] ECF No. 41; Appeal ECF Nos. 41, 51, 53, 55.

7, 2015.  The Settlement was, to say the least, the result of lengthy and sometimes contentious arm's-length negotiations between the Parties.  The process was thorough, adversarial, and professional.  Decl. ¶ 15.

A.      **Terms of the Settlement Agreement**

The following summarizes the principal terms of the Settlement:[9]

1.      **Non-Monetary Equitable Consideration**.  The key concept of the Settlement Agreement is that the participants in the Plans will receive certain ERISA-like protections for the next seven and one-half years. Barring a significant change in the law, the Plans will remain non-ERISA plans, but Ascension itself will guarantee participants will receive from their Plans the level of benefits stated in the Plans through June 30, 2022.  Settlement ¶ 9.2.  Ascension has made similar financial commitments for participants should there be a plan termination, merger, or amendment.  *Id.* ¶¶ 9.3-9.5.  These commitments are crucial because the Ascension Plans, like most church plans, purport to be "fund-specific." This means that the Plans' financial responsibility for benefits, at least according to the Plans' documents, is limited *solely* to the amount of assets in the fund.  *See, e.g.*, ECF No. 23 at 103.  Such fund-specific provisions are forbidden by ERISA and, as to Ascension, the limitation is now forbidden by the Settlement Agreement for the next seven and one-half years.

2.      **Monetary Consideration**.  Ascension will contribute $8 million to the Plans.

3.      **Other Equitable Consideration**.  The Settlement also includes

---

[9] *See* Decl. Exhibit 1.

equitable provisions, mimicking the provisions of ERISA, concerning plan administration, summary plan descriptions, notices (annual summaries, pension benefits statements, current benefit values), and the Plans' claim review procedure.

4.    **Class.**  The Settlement contemplates that the Court will certify a non-opt-out class under Federal Rules of Civil Procedure 23(b)(1) and/or (b)(2).

5.    **Released Claims**.  Paragraph 4 of the Settlement generally defines the Released Claims as claims brought by Plaintiff, or claims that could have been asserted by Plaintiff based upon the allegations in the instant Action.  However, there is a significant carve out from the Released Claims. Recognizing that the law on church plans is still in flux, the Settlement Agreement provides that Ascension will not be released prospectively in the event of a change in the law which makes clear that the Ascension Plans are not church plans. Likewise, the release will not apply prospectively in the event the structure of the Ascension Plans changes so that the Plans are plainly not church plans under the Court's analysis of the church plan exemption.

6.    **Notice**.  The Preliminary Approval Order provided for the following notices:  (a) a mailed notice (Ex. A to the Preliminary Approval Order), to be mailed to the last known address of members of the Settlement Class; and (b) internet publication of the Settlement Agreement and Class Notice on www.kellersettlements.com.  Defendants paid the cost for notice.

7.    **Attorneys' Fees**.  By separate application, Class Counsel seeks an award of attorneys' fees, expenses and a class representative Incentive Fee for Named Plaintiff, in an amount not to exceed $2 million.  The Settlement Class was

notified of these details in the Class Notice. The attorneys' fees are separate from the $8 million contribution to the Plans—the attorneys' fees, expenses and a class representative Incentive Fee to Named Plaintiff will not reduce that contribution.

## C.     Reasons for the Settlement

Plaintiff has entered into this proposed Settlement with an understanding of the strengths and weaknesses of her claims. This understanding is based on: (1) the motion practice undertaken by the Parties in the district court and the appellate briefing; (2) investigation and research; (3) the likelihood that Plaintiff would prevail on appeal; (4) the likelihood that Plaintiff would prevail at trial if her appeal is granted; (5) the range of possible recovery; (6) the substantial complexity, expense, and duration of litigation necessary to prosecute this action through appeal, and if successful there, through trial, post-trial motions, and likely additional appeals, and the significant uncertainties in predicting the outcome of this complex litigation; and (7) Defendants'—and their amici—determination to fight and contest every aspect of the case. Having undertaken this analysis, Class Counsel and Plaintiff have concluded that the Settlement is fair, reasonable, and adequate, and should be presented to the Court for approval.

## D.     Preliminary Approval

Class Counsel moved for preliminary approval of the Settlement Agreement on May 7, 2015, ECF No. 86, and the Court entered the Preliminary Approval Order on May 11, 2015, ECF No. 88. In the Preliminary Approval Order, the Court found that the proposed Class met all the requirements of Rules 23(a) and (b), and preliminarily certified the Class defined above pursuant to Rules 23(b)(1) and/or

(2) and 23(e). *Id.* at 4-5. The Court further appointed Marilyn Overall, the Named Plaintiff, as the class representative for the Settlement Class, and appointed Keller Rohrback L.L.P., Cohen Milstein Sellers & Toll, PLLC, and Stephen F. Wasinger PLC as Class Counsel for the Settlement Class. *Id.* at 5.

## E.    Notice to the Class and the Relative Lack of Objections

In paragraph 5 of the Preliminary Approval Order, the Court approved the form of the proposed Notice and set deadlines for mailing and publishing the Notice and for posting the Notice on the settlement website created and maintained for this litigation.  ECF No. 88.  In accordance with the Court's Order, Defendants issued the Court-approved Notice on July 17, 2015. The Affidavit of Abigail Schwartz, Senior Project Manager for the Notice Administrator, Rust Consulting ("Rust"), attached to the Declaration as Exhibit 2 ("Rust Declaration" or "Rust Decl."), demonstrates compliance with this Court's Order for Class Notice. The Rust Declaration attests to the mailing of more than 149,034 individual Notices to the Settlement Class, wherein September 3, 2015 was established as the deadline for objecting to the proposed Settlement and Plaintiff's motion for attorneys' fees and other relief. Rust Decl. ¶ 10. Further, Rust created a dedicated telephone line for the Settlement Class.  As of August 7, 2015, 1,652 phone inquiries have been received. *Id.* ¶ 12.

On July 15, 2015, Class Counsel also posted the Complaint, the Settlement Agreement, the Class Notice, the preliminary approval briefing, and the Preliminary Approval Order on www.kellersettlements.com, the dedicated Settlement website through which the Settlement Class could access Settlement-related information and

materials. *See* Decl. ¶ 27.  As of August 14, 2015, the site had recorded 2,514 visitor

sessions and Class Counsel have responded to 61 email and phone inquiries.

*Id.* ¶ 27.

## III.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.   Standard of Review

Plaintiff respectfully requests that the Court determine that the proposed

settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In

evaluating whether a settlement is fair, reasonable and adequate, the following

factors inform the court's inquiry:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely
> duration of the litigation; (3) the amount of discovery engaged in by the
> parties; (4) the likelihood of success on the merits; (5) the opinions of
> class counsel and class representatives; (6) the reaction of absent class
> members; and (7) the public interest.

*Moulton*, 581 F.3d at 349 (citation omitted).  Consideration of these factors aids in

the determination of "whether the interests of the class as a whole are better served

if the litigation is resolved by the settlement rather than pursued."  *In re Cardizem*

*CD Antitrust Litig.*, 218 F.R.D. 508, 522 (E.D. Mich. 2003) (citing MANUAL FOR

COMPLEX LITIG. § 30.42 at 238 (3d ed. 1995)).

When examined under the applicable criteria, each and every factor supports

final judicial approval of the Settlement, which is an excellent result for the Class.

### 1.   There Was and Is No Fraud or Collusion in the Settlement

"[C]ourts presume the absence of fraud or collusion in class action

settlements unless there is evidence to the contrary."  *Sheick v. Auto. Component*

*Carrier LLC*, No. 09-14429, 2010 WL 4136958, at *19 (E.D. Mich. Oct. 18, 2010)

(citing *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006)). Settlement approval is appropriate where the parties reach an agreement after arm's-length negotiations – *i.e.*, where there is no collusion or benefit to certain parties to the detriment of the class as a whole.

As noted above, the Parties participated in the mediation program sponsored by the Sixth Circuit, pursuant to Rule 33 of the Sixth Circuit Rules. Following extensive negotiations with the assistance of an experienced Circuit mediator for over six months, the Parties reached an agreement. Decl. ¶ 30. During the mediation process, the Circuit mediator was in constant contact with the Parties both orally and in writing. *Id.* ¶ 30. The Parties submitted confidential statements to the Circuit mediator and settlement proposals to each other. *Id.* When the negotiations reached an impasse in January, 2015, the Circuit mediator broke the log jam with her mediator's proposal. *Id.* The Parties separately accepted the Circuit mediator's proposal after further analysis and deliberation. *Id.* Thus, the negotiations were conducted at arm's-length and without collusion.

2.   **The Complexity, Expense and Likely Duration of the Litigation Favor Settlement**

Courts must evaluate the complexity, expense and likely duration of litigation before approving a class action settlement. *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). Plaintiff recognizes the possibility that the outcome of the appeal will not be as expected. Class Counsel believe that pursuant to ERISA only a church can establish a church plan, and therefore the Plans are not church plans exempt from ERISA because they were established by Ascension—a hospital. However, Plaintiff is aware that the Sixth Circuit could

10

disagree with Plaintiff (as did this Court) on this threshold statutory argument. Additionally, Plaintiff recognizes that the Sixth Circuit could disagree with Plaintiff on her alternative arguments, *e.g.*, that Ascension is not controlled by or associated with the Catholic Church, and that Plaintiff did not have standing to pursue her Constitutional claim, as did this Court.

In addition, presenting an ERISA case of this type on the merits is a massive undertaking, with substantial risks, expense, and delay.  Defendants have forcefully defended their actions with respect to the Plans to date, and there is no reason to believe they would not continue to do so through trial and on appeal if necessary. Additionally, Defendants' arguments were supported by amici at both the district court and appellate level.  In short, a favorable decision by the Sixth Circuit on the merits is not so much a foregone conclusion as to remove the impetus for settlement while the proposed Settlement Agreement provides both monetary and non-monetary consideration to the Plans for the benefit of the Settlement Class.  The monetary and non-monetary consideration to the Plans are far better for the Plans' participants than the possibility of a more significant recovery, if any, after an expensive and protracted trial and appeal.

     3.    **The Absence of Formal Discovery does not Disfavor Settlement**

The absence of formal discovery is not an obstacle to settlement approval so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties.  *See Sheick*, 2010 WL 4136958, at *19 n.3 (noting that "courts do not require formal discovery so long as the parties have adequate information in order to evaluate the relative positions") (quoting *Newby v. Enron*

*Corp.*, 394 F.3d 296, 306 (5th Cir. 2004) ("Formal discovery [is not] a necessary ticket to the bargaining table.")).

In this case, prior to filing their claims, Class Counsel extensively investigated the publicly available information and investigated the facts, including review and analysis of Plan-related documentation, review of Ascension's disclosures, analysis of Ascension's publicly available financial statements, and interviews of Plan participants.  Decl. ¶ 31.  Additionally, in support of their motion to dismiss, Defendants submitted over 1,800 pages of documents, all of which Class Counsel reviewed, and which Class Counsel moved to strike as being not subject to judicial notice.  ECF No. 53.

Class Counsel also responded to a motion to dismiss, responded to one amicus brief supporting Defendants at the district court level, filed their opening and reply briefs with the Sixth Circuit, and responded to four amicus briefs supporting Defendants at the appellate level.  The absence of formal discovery in this case in no way undermines the integrity of the settlement given the extensive investigation that has occurred as a result of proceedings thus far.  *Griffin v. Flagstar Bancorp.Inc.*, No. 10-10610, 2013 WL 6511860, at *4 (E.D. Mich. Dec. 12, 2013).

4.   **The Likelihood of Success on the Merits Weighed Against the Consideration Offered in the Settlement Favors Approval**

As evidenced by the vigor with which they have prosecuted the ERISA Action, and the substantial amount of time and money they have expended to that end, Class Counsel believe strongly in their claims and the legal basis for them.  But there is risk in any litigation, and especially here, where the district court dismissed the Action, and the area of the law—ERISA church plan litigation—is one of the

12

most nuanced, unpredictable, and rapidly developing in ERISA jurisprudence.
Indeed, three such cases are before courts of appeal on interlocutory appeals.[10]
As a result, any prediction of success is far from reliable.[11]

If this Settlement is not approved, a substantial amount of work will need to
be completed, including resolution of the appeal before the Sixth Circuit,
completion of fact and expert discovery, class certification, designation of witnesses
and exhibits, preparation of pre-trial memoranda and proposed findings of fact and
conclusions of law, presentation of witnesses and evidence at trial, and, depending
on the trial court's ruling on the merits, briefing of the losing party's almost-certain
appeal. Plaintiff believes that her claims would be successful, but nonetheless is
aware of the risks associated with proceeding to trial.

In this case, Defendants (and their amici) have forcefully defended their
actions with respect to the Plans, and have shown no hesitance to litigate this matter
fully through the appeal and trial, should Plaintiff's appeal be successful. Moreover,
Defendants are represented by highly experienced and competent counsel. In view
of these potential obstacles to recovery, the Settlement payment of $8 million should
be regarded as a highly favorable recovery.

---

[10] *Rollins v. Dignity Health*, No. 15-15351 (9th Cir. Feb. 26, 2015); *Stapleton v.
Advocate Health Care Network & Subsidiaries*, No. 15-1368 (7th Cir. Feb. 25,
2015); and *Kaplan v. Saint Peter's Healthcare Sys.*, No. 15-1172 (3d Cir. Jan. 20,
2015).

[11] *Compare, e.g.*, *Chavies v. Catholic Health E.*, No. 13-1645 (E.D. Pa. Mar. 28,
2014); *Saint Peter's*, 2014 WL 1284854; *Dignity*, 19 F. Supp. 3d 909; and
*Stapleton v. Advocate Health Care Network & Subsidiaries*, No. 14-01873, 2014
WL 7525481, --- F. Supp. 3d ---- (N.D. Ill. Dec. 31, 2014), *with Overall v.
Ascension Health*, 23 F. Supp. 3d 816 (E.D. Mich. 2014); *Medina v. Catholic
Health Initiatives*, No. 13-01249, 2014 WL 4244012 (D. Colo. Aug. 26, 2014); *and
Lann v. Trinity Health Corp.*, (D. Md. Feb. 24, 2015).

It should further be stressed that the non-monetary consideration provided by Defendants provides substantial benefits to the Plans' participants. Ascension has guaranteed that its Plans will pay participants the level of benefits stated in the Plans through June 30, 2022. Settlement ¶ 9.2. Ascension has made similar financial commitments for participants should there be a plan termination, merger, or amendment. Specifically, Ascension has guaranteed—through June 30, 2022, that: (1) none of the Plans may be terminated unless there is sufficient assets to meet the life annuity and lump sum distribution amounts (as those terms are defined by the relevant Plan), elected by participants in a termination, including any administrative costs; (2) if any Plan is amended, the actuarial value of a participant's accrued benefit under the terms of the Plan will be no less than it was the day immediately prior to the effective date of the amendment; and (3) if any Plan is merged into another Plan, participants will be entitled to the same (or greater) benefits post-merger as they enjoyed before the merger. *Id.* ¶¶ 9.3- 9.5.

These commitments are significant, as the liabilities of these Ascension Plans are purportedly "fund-specific." Prior to the enactment of ERISA, the sponsor of a defined benefit plan could limit its responsibility for benefit levels to whatever assets were contained in the fund, i.e., a "fund-specific plan". John Langbein et al., PENSION & EMPLOYEE BENEFIT LAW 187-88 (6th ed. 2015). As explained in the Complaint, among the factors that led to the enactment of ERISA were the widely publicized failures of certain defined benefit pension plans, especially the plan for employees of Studebaker Corporation, an automobile manufacturing company which defaulted on its pension obligations in 1965. Complaint ¶ 44 (citing

Langbein, 78-83).  The Studebaker plan was fund-specific. *Id*. ¶ 244.  ERISA prohibits this sort of fund-specific defined benefit promise.  *Id*.  Thus, the Ascension Plan is, in essence, a Studebaker-type pre-ERISA Plan.  Accordingly, the Settlement's equitable consideration provides the Plans' participants and beneficiaries with certain ERISA-like protections for the next seven and one-half years.

Additionally, the Settlement provides: should ERISA's church plan provision be amended, or if the IRS determines the Plans do not qualify for church plan exemption, or if the Supreme Court holds that church plans are limited to plans established by churches, the Parties prospectively will not have released claims derived therefrom.  Settlement ¶ 4.1.4.  The Settlement also includes equitable provisions, mimicking the provisions of ERISA, concerning plan administration, summary plan descriptions, notices (annual summaries, pension benefits statements, current benefit values), and the Plans' claim review procedure.  *Id*. ¶ 9.9.

### 5.   **The Opinions of Experienced Counsel Weigh in Favor of Approval**

Courts further recognize that the opinion of experienced, informed and competent counsel in favor of settlement should be afforded substantial consideration.  *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983); *IUE-CWA,* 238 F.R.D. at 597 ("The judgment of the parties' counsel that the settlement is in the best interest of the settling parties 'is entitled to significant weight, and supports the fairness of the class settlement.'").  As evidenced by their firm resumes attached to the Declaration, and as detailed in the Declaration paragraphs 32-36, Class Counsel have extensive experience in handling ERISA church plan litigation

and other class action ERISA cases.

Furthermore, Class Counsel have been able to develop the issues in this case to an appropriate point for settlement. They have conducted an extensive investigation; engaged in motion practice, including briefing on the motion to dismiss, filing an appeal, and responding to Defendants' amicus briefs at both the district court and appellate level; and participated in numerous negotiations concerning the issues in this litigation. While there is much to be done to prepare the case for trial, Plaintiff possesses a comprehensive understanding of both the strengths and the weaknesses of her claims, and believes that the Settlement is fair, reasonable and is in the best interests of the Plans and the Class. This opinion weighs heavily in favor of both preliminary and final approval of the Settlement.

6.    **The Reaction of Absent Members of the Settlement Class**

A certain number of objections are undoubtedly expected in a class action. *In re Cardizem*, 218 F.R.D. at 527. "Although the Court should consider objections to the settlement, the existence of objections does not mean that the settlement is unfair." *In re Telectronics*, 137 F. Supp. 2d at 1018. The adequacy and reasonableness of the Settlement Agreement is evidenced here by the fact that, following service of the Class Notice to approximately 149,034 members of the Settlement Class, thus far only one[12] individual has lodged an objection with the

---

[12] Three individuals filed documents with the Court, ECF Nos. 92, 93, & 94. However, following conversations with Class Counsel, on August 13, 2015, Class Counsel received notice that one of those objections, ECF No. 93, was withdrawn, and another of the filings, ECF No. 94, is not an objection, but an inquiry regarding the Settlement.

16

Court.[13]

Class Counsel will address the objections in their Reply in Support of Final Approval (the "Reply") due on September 10, 2015.  Class Counsel have already spoken with over 61 class members about the settlement. Decl. ¶ 37.  In virtually all cases, the class members do not object to the settlement itself, but have a variety of concerns about the safety of their pension promises. *Id.*  None of the participants who have contacted Class Counsel thus far was aware that the plan purports to be a church plan not subject to ERISA regulation. *Id.*  In any event, as mentioned, Class Counsel will respond specifically to those who do formally object to the settlement in the Reply.

### 7.    The Public Interest

As noted above, public policy favors settlement, especially in complex matters such as class actions alleging breach of fiduciary duty claims under ERISA. Indeed, the Sixth Circuit has expressly recognized the public interests served through compromise:

> Settlement agreements should . . . be upheld whenever equitable and policy considerations so permit.  By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before overburdened courts, and to citizens whose taxes support the latter.  An amicable compromise provides the more speedy and reasonable remedy for the dispute.

*Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976), *cert. denied*, 429 U.S. 862 (1976).

Moreover, there is a public interest in settlement of disputed claims that

---

[13] *See Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004) (finding that only 4 objections of a class of over 100,000 members was overwhelming support of the settlement).

would otherwise require substantial federal judicial resources.  *See In re Cardizem*, 218 F.R.D. at 530 ("[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources.") (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992))

Here, there are no contravening public interest justifications sufficient to support deviating from the public interest served by settlement of this action, which provides both monetary and non-monetary consideration to the Plans.  This factor weighs strongly in favor of approval as well.

B. **The Form and Methods of Notice Employed Satisfy Rule 23 and Due Process**

In accordance with the Preliminary Approval Order, the Settlement Class has been provided with ample and sufficient notice of this Settlement, including an appropriate opportunity to voice objections.  The notice plan fully informed Settlement Class members of the lawsuit and the proposed Settlement, and enabled them to make informed decisions about their rights.  Decl. ¶ 38.

Due process requires that notice to class members be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *United States v. Latham*, 54 Fed. App'x. 441, 444 (6th Cir. 2002) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  For the due process standard to be met, "it is not required that the [class member] receive actual notice" so long as class counsel acted reasonably in selecting means likely to inform persons affected. *Id.* at 444-45.  To satisfy Rule 23, "[f]or non-opt out cases, such as the ERISA

Actions, [all that is required is] such unspecified 'appropriate notice' as 'the court may direct[.]'" *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 448 (S.D.N.Y. 2004) (quoting Fed. R. Civ. P. 23(c)(2)(A)).  Here, the form and methods of notice of proposed Settlement provided pursuant to the Preliminary Approval Order satisfy all due process considerations and Rules 23(c)(2) and (e)(1).

The mailed class notice provided to approximately 149,034 individual members of the Settlement Class detailed information about the Settlement, including: (1) a comprehensive summary of its terms; (2) notice of Class Counsel's intent to request attorneys' fees, reimbursement of expenses, and a class representative Incentive Fee for Named Plaintiff; and (3) detailed information about the Released Claims.  In addition, the notice provided information about the Fairness Hearing date, rights of members of the Settlement Class to object (and deadlines and procedures for objecting) and the procedure to receive additional information.  Decl. ¶ 39.  The mailed class notice provided members of the Settlement Class with contact information for Class Counsel, information on the toll-free phone number for inquiries and a website address for further information. *Id.*.

The notice form and methods employed here are substantially similar to those successfully used in many other ERISA class settlements and "fairly, accurately, and neutrally describe the claims and parties in the litigation[,]…the terms of the proposed settlement and the identity of persons entitled to participate in it." *Foe v. Cuomo*, 700 F. Supp. 107, 113 (E.D.N.Y. 1988), *aff'd*, 892 F.2d 196 (2d Cir. 1989), *cert. denied*, 498 U.S. 972 (1990).  Accordingly, the notice provided to the

Settlement Class satisfies the requirements of due process and Rule 23.

C.     **Certification of the Settlement Class Is Appropriate**

To proceed with the settlement approval process, it is necessary for the Court to certify a class for Settlement.  Federal Rule of Civil Procedure 23 provides that an action may be maintained as a class action if each of the four prerequisites of Rule 23(a) is met and, in addition, the action qualifies under one of the subdivisions of Rule 23(b).  Courts across the country have determined that breach of fiduciary duty claims under ERISA that are analogous to those at issue in this action are uniquely appropriate for class treatment.[14]  Furthermore, the Supreme Court has acknowledged the propriety of certifying a class solely for settlement purposes. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618 (1997).  As set forth below, the Class easily satisfies the requirements of Rule 23(a), (b)(1) and (b)(2) requirements and thus certification of the settlement Class is appropriate.

1.     **The Requirements of Rule 23(a) Are Easily Satisfied**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Defendants have identified, and the Class Notice has been sent to approximately 149,034 members of the Settlement Class.  *See* Rust Decl. ¶¶ 8-10.

---

[14] *See, e.g.*, *Hans v. Tharaldson*, No. 05-115, 2010 WL 1856267, at *10 (D.N.D. May 7, 2010) (certifying under Rule 23(b)(1)(A) and 23(b)(1)(B)); *Moore v. Comcast Corp.*, 268 F.R.D. 530, 538 (E.D. Pa. Apr. 6, 2010) (certifying under Rule 23(b)(1)(B )).  *See also In re Nortel Networks Corp. "ERISA" Litig.*, No. 03-01537, 2009 WL 3294827 (M.D. Tenn. Sept. 2, 2009) (certifying claims for breach of fiduciary duty under Rule 23(b)(1)); *Shirk v. Fifth Third Bancorp*, No. 05-049, 2008 WL 4425535, at *5 (S.D. Ohio Sept. 30, 2008) (same); *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539 (E.D. Mich. 2004) (same); *Rankin*, 220 F.R.D. 511 (same).

Under Rule 23(a)(2), a finding of commonality requires "only a single issue common to all members of the class." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996). In the instant case, members of the Settlement Class share multiple issues of law and fact, such as whether the Plans are exempt from ERISA as church plans, and, if not, whether the fiduciaries of the Plans have failed to administer and fund the Plans in accordance with ERISA.

Plaintiff must also show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement is met if the plaintiff's claim 'arises from the same event or practice or course of conduct that gives rise to the claims of the other class members, and her or his claims are based on the same legal theory." *Rankin*, 220 F.R.D. at 518. Plaintiff's claims arise from the same course of events as the claims of the Settlement Class—Defendants' alleged failure to maintain the Plans in accordance with ERISA. Moreover, each member of the Settlement Class asserts the same claims arising from the same conduct by Defendants and seeking the same relief on behalf of the Plans.

Rule 23(a)(4) requires that class representatives fairly and adequately protect the interests of the class they seek to represent. "[T]he Sixth Circuit appears to focus on the adequacy of plaintiff's counsel and whether plaintiff has a conflicting interest, not the personal qualifications of the named plaintiff." *Rankin*, 220 F.R.D. at 520. The "adequacy" test is easily met in this case, particularly in the context of the Settlement Class. The claims and interests of the Named Plaintiff were congruent with those of the other members of the Settlement Class: all seek to

increase the retirement security of the Plans, whether through monetary or non-monetary relief. There can be no question that the Named Plaintiff's interests are aligned with those of the Settlement Class and that she has retained qualified counsel, and that she has satisfied that requirements of Rule 23(a).

> 2.   **The Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2)**
>
> > a.   **Individual actions would create inconsistent adjudications or be dispositive of the interests of absent members**

A class may be certified under Federal Rule of Civil Procedure 23(b)(1) if, in addition to meeting the requirements of Federal Rule of Civil Procedure 23(a), the prosecution of separate actions by individual class members would create the risk of inconsistent adjudications, which would create incompatible standards of conduct for the defendant, or would as a practical matter be dispositive of the interests of absent members. Fed R. Civ. P. 23(b)(1)(A) & (B). Courts have certified classes under Rule 23(b)(1) in ERISA cases for those very reasons.[15]

Moreover, the Advisory Committee on Rule 23 specifically noted that actions that "charge[] a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of . . . beneficiaries" – *i.e.*, an action like the present action – "should ordinarily be conducted as class actions" under Rule 23(b)(1)(B). *See* Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment). As a result, certification of the proposed class under Rule 23(b)(1) is

---

[15] *See In re CMS Energy ERISA Litig.*, 225 F.R.D. at 546. *See also Mezyk v. U.S. Bank Pension Plan*, No. 09-384, 2011 WL 601653, at *9 (S.D. Ill. Feb. 11, 2011) (Rule 23(b)(1)(A) certification appropriate "to establish one single standard of conduct for the defendants' administration of [a defined benefit Plan]" where participants sought "broad declaratory and injunctive relief" regarding whether plan provisions violated ERISA.).

appropriate in this ERISA Action.

   b. **Defendants have acted on grounds generally applicable to the Class and relief for the Class as a whole is appropriate**

  A class may be certified under Federal Rule of Civil Procedure 23(b)(2) if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). Here, Plaintiff alleges that Defendants failed to comply with ERISA on a Plan-wide basis. The available remedies include monetary relief and remedial equitable relief to the Plans as a whole. ERISA §§ 502(a)(2) & (3), 29 U.S.C. §§ 502(a)(2) & (3).

  Remedies under ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2), are by definition plan-wide, a classic example of equitable relief.[16] While the Settlement includes monetary consideration to the Plans, that consideration is incidental to, and flows directly from, Plaintiff's prayer for injunctive and declaratory relief.[17] Accordingly, Plaintiff's claims are also properly certified under Rule 23(b)(2).

---

[16] *See, e.g., Smith v. Provident Bank*, 170 F.3d 609, 616 (6th Cir. 1999) ("ERISA authorizes participants to sue on behalf of a plan for breach of fiduciary duty, *see* 29 U.S.C. § 1132(a)(2) . . . . Permitting such suits by participants is the mechanism which Congress established to enforce the plan's right to recover for a breach of fiduciary duty." (citing 29 U.S.C. §§ 1109(a), 1132(a)).

[17] *Mezyk*, 2011 WL 601653, at *9 ("It is true that if such relief were awarded, class members may receive monetary benefits that would naturally flow from the award of declaratory or injunctive relief. However, that does not detract from the fact that the relief sought is predominantly declaratory or injunctive in nature."); *Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 259 (S.D. Iowa 2001) (same); *see also Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763-64 (7th Cir. 2003) (certifying Federal Rule of Civil Procedure 23(b)(2) class where ERISA plaintiffs sought declaratory relief).

3.    **The Requirements of Rule 23(g) Are Met**

Federal Rule of Civil Procedure 23(g) requires the Court to examine the capabilities and resources of class counsel.  Class Counsel has explained the claims brought in this action, and the time and effort already expended in connection with this litigation.  Moreover, Class Counsel are among the leading ERISA plaintiffs' firms, and possess unparalleled expertise in the specific types of ERISA claims brought in this lawsuit.  Decl. ¶ 32.  Class Counsel thus satisfy the requirements of Rule 23(g).

## II.    CONCLUSION

For the reasons discussed herein, Named Plaintiff respectfully submits that the Settlement should be granted final approval because it is a fair and reasonable result when viewed against the governing standard.  Moreover, the Settlement Class meets all the requirements of Rule 23 and should be finally certified.

DATED August 17, 2015.

*s/ Lynn L. Sarko*
Lynn L. Sarko
Havila C. Unrein
Matthew M. Gerend
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900 / Fax: (206) 623-3384
Email: lsarko@kellerrohrback.com
hunrein@kellerrohrback.com
mgerend@kellerrohrback.com

Ron Kilgard
Laurie Ashton
**KELLER ROHRBACK, L.L.P.**
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
Tel: (602) 248-0088 / Fax: (602) 248- 2822
Email:  rkilgard@kellerrohrback.com
lashton@kellerrohrback.com

Karen L. Handorf
Michelle C. Yau
Matthew A. Smith
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Tel: (202) 408-4600 / Fax: (202) 408-4699
Email:  khandorf@cohenmilstein.com
myau@cohenmilstein.com
msmith@cohenmilstein.com

Stephen F. Wasinger
**STEPHEN F. WASINGER PLC**
300 Balmoral Centre
32121 Woodward Avenue
Royal Oak, MI  48073-0999
Tel: (248) 544-1500 / Fax: (248) 544-1501
Email: sfw@sfwlaw.com
ID: P25963

*Of Counsel:*
Bruce F. Rinaldi
**COHEN MILSTEIN SELLERS & TOLL, PLLC**
1100 New York Avenue, N.W.
Suite 500, West Tower
Washington, D.C.  20005
Tel: (202) 408-4600 / Fax: (202) 408-4699
Email:  brinaldi@cohenmilstein.com

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Michael P. Coakley (P34578)
Mary Kate Griffith (P72284)
**MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.**
150 West Jefferson, Suite 2500
Detroit, MI 48226
Tel: (313) 963-6420
Email: coakley@millercanfield.com
Griffith@millercanfield.com

Howard Shapiro
Robert W. Rachal
Stacey C. S. Cerrone
**PROSKAUER ROSE, LLP**
650 Poydras Street, Suite 1800
New Orleans, LA  70130
Telephone: (504) 310-4085
Fax (504) 310-2022
Email: howshapiro@proskauer.com
rrachal@proskauer.com
scerrone@proskauer.com
***Counsel for Defendants***

*s/ Lynn L. Sarko*
Lynn L. Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Tel: (206) 623-1900
Fax: (206) 623-3384
Email:  lsarko@kellerrohrback.com