# EXHIBIT 1

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MARILYN OVERALL, on behalf of herself, individually, and on behalf of all others similarly situated, | )<br>)  Civil No. 13-cv-11396-AC-LJM<br>)<br>)  Hon. Avern Cohn |
| Plaintiff, | ) |
| v. | ) |
| ASCENSION HEALTH, et al. | ) |
| Defendants. | ) |

## CLASS ACTION SETTLEMENT AGREEMENT

This CLASS ACTION SETTLEMENT AGREEMENT ("Settlement Agreement") is entered into by and between Plaintiff, as defined in § 1.13 below, on the one hand, and Defendants, as defined in § 1.7 below, on the other.  Plaintiff and Defendants are referred to collectively in this Settlement Agreement as the "Parties."  Capitalized terms and phrases have the meanings provided in § 1 below or as specified elsewhere in this Settlement Agreement.

1.   DEFINITIONS

1.1.   "*Action*" shall mean:  *Overall v. Ascension*, No. 2:13-cv-11396-AC-LMJ, an action pending in the United States District Court for the Eastern District of Michigan as remanded by the United States Court of Appeals for the Sixth Circuit in *Overall v. Ascension*, No. 14-1735, Document 72-2.

1.2.   "*Ascension*" shall mean:  Ascension Health Alliance, a non-profit corporation; its predecessors and successors; and any organization that is a member of the same controlled group as Ascension Health Alliance.  For the purposes of this definition, an organization is a member of the same controlled group if it is under common control with Ascension Health Alliance pursuant to Treas. Reg. § 1.414(c)-5(b).

1.3.   "*Church Plan*" shall mean:  a plan which meets the definition of a "church plan" under ERISA § 3(33), 29 U.S.C. § 1002(33) and is thus exempt from the provisions of Title I and Title IV of ERISA.

1.4.   "*Class Counsel*" shall mean:  Keller Rohrback L.L.P., Cohen Milstein Sellers & Toll, PLLC, and Stephen F. Wasinger, PLC.

1.5. "*Complaint*" shall mean: the Class Action Complaint, filed in this Action on March 28, 2013.

1.6. "*Court*" shall mean: The United States District Court for the Eastern District of Michigan.

1.7. "*Defendants*" shall mean: Ascension, Ascension Health, Ascension Health Alliance, Catholic Health Investment Management Company, Derek Beecher, Jean Deblois, Eric Feinstein, William Finlayson, Timothy Flesch, Trennis Jones, Kathleen Kelly, Ellen Kron, Tom Langston, Laura Lentenbrink, Patrick McGuire, Joseph O. Murdock, Theresa Peck, Barbara Potts, Larry Smith, Anthony Tersigni, Herbert Vallier, Douglas Waite, Frank Warning, and Carol Whittington.

1.8. "*Effective Date of This Settlement Agreement*" shall mean: the date on which all of the conditions to settlement set forth in § 3 of this Settlement Agreement have been fully satisfied or waived and the Settlement shall have become Final.

1.9. "*ERISA*" shall mean: the Employee Retirement Income Security Act of 1974, as amended, including all regulations promulgated thereunder.

1.10. "*Final*" shall mean: with respect to any judicial ruling or order in the Action, that the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari or any other proceedings for review ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a full and completed disposition of any such Review Proceeding, including the exhaustion of proceedings in any remand and/or subsequent appeal on remand.

1.11. "*Incentive Fee to Plaintiff*" shall mean: any monetary amount awarded by the Court in recognition of the Named Plaintiff's assistance in the prosecution of this Action and payable pursuant to § 8.1.4 below.

1.12. "*Person*" shall mean: an individual, partnership, corporation or any other form of organization.

1.13. "*Plaintiff*" and "*Named Plaintiff*" shall mean: Marilyn Overall.

1.14. "*Plan*" or "*Plans*" shall mean: all defined benefit pension plans maintained, sponsored, or claimed by Ascension as Church Plans as of the Effective Date of this Settlement Agreement, including but not limited to: Ascension Health Pension Plan, Borgess Health Alliance Pension Plan, Carondelet Health Pension Plan, Catholic Health Partners Pension Plan, Columbia Hospital Retirement Plan, St. John Health Pension Plan, St. Joseph Health System Pension Plan, St. Joseph Regional Medical Center Pension Plan, St. Mary's Healthcare Pension Plan, Genesys Regional Medical Center Retirement Plan, Via Christi Health Cash Balance Plan, Alexian Brothers Health System Basic Pension Plan, Alexian Brothers of San Jose, Inc. Bargaining Unit Pension Plan, Affinity Health System Retirement Plan, St. John Health System Employee Retirement Plan, and Ministry Health Care Employee Retirement Plan.

1.15.   *"Released Claims"* shall have the meaning provided in § 4.

1.16.   *"Releasees"* shall mean: the Defendants, the Plans, any Person who served as a trustee, investment manager, service provider, record-keeper, or named or functional fiduciary (including de facto fiduciaries) of the Plans, together with, for each of the foregoing, any and all predecessors, Successors-In-Interest, affiliates, associates, present and former Representatives, direct or indirect parents and subsidiaries, all counsel and any Person that controls, is controlled by, or is under common control with any of the foregoing, including, without limitation, every person who was a director, officer, governor, management committee member, in-house counsel, employee, or agent of Ascension Health, Ascension Health Alliance, Catholic Health Investment Management Company, and their subsidiaries and affiliates, together with, for each of the forgoing, any and all present or former Representatives, insurers, reinsurers, consultants, attorneys, administrators, employee benefit plans, investment advisors, investment underwriters, and spouses.

1.17.   *"Representatives"* shall mean: representatives, attorneys, agents, directors, officers, employees, insurers and reinsurers.

1.18.   *"Settlement"* shall mean: the settlement to be consummated under this Settlement Agreement pursuant to the Final Approval Order.

1.19.   *"Settlement Class"* shall mean: All who were participants in or beneficiaries of the Plans on or before the Effective Date of Settlement (the "Class Period").

1.20.   *"Successor-In-Interest"* shall mean: a Person's estate, legal representatives, heirs, successors or assigns, and any other Person who can make a legal claim by or through such Person.

1.21.   *"Term Sheet"* shall mean: the document entitled Defendants' Final Settlement Term Sheet dated March 6, 2015, based on which the Parties jointly moved the United States Court of Appeals for the Sixth Circuit (the "Sixth Circuit") to remand the Action to the District Court for the purpose of seeking approval of the Settlement.

2.   RECITALS

2.1.   In the Complaint, Plaintiff alleges causes of action on behalf of the Settlement Class arising under ERISA §§ 204(h), 402, 403, and 502(a).

2.2.   Plaintiff alleges and seeks declaratory relief that the Plans are not Church Plans within the meaning of ERISA § 3(33) and thus are subject to the provisions of Title I and Title IV of ERISA.  Plaintiff alleges that Defendants (a) failed to provide notice of reduction of benefit accruals under ERISA § 204(h); (b) violated ERISA's reporting and disclosure provisions; (c) failed to adhere to ERISA's required minimum funding standards for the Plans; (d) failed to establish the Plans pursuant to a written instrument meeting the requirements of ERISA § 402; and (e) failed to establish a trust meeting the requirements of ERISA § 403.  Plaintiff alleges that all Defendants breached fiduciary duties owed to the Plans' participants and beneficiaries, including Plaintiff.  Plaintiff also alleges that the "church plan" exception, as claimed by

Defendant Ascension Health, violates the establishment clause of the First Amendment of the United States Constitution.  Defendants deny each and every allegation and assert that Ascension is associated with and controlled by the Roman Catholic Church and the Plans are Church Plans exempt from ERISA.

2.3.    Class Counsel has conducted an extensive investigation into the facts, circumstances and legal issues associated with the allegations made in the Action.  This investigation has included, *inter alia:* (a) inspecting, reviewing and analyzing documents produced by or otherwise relating to Defendants and the Plans; (b) researching the applicable law with respect to the claims asserted in the Action and the defenses and potential defenses thereto; (c) inspecting, reviewing and analyzing documents concerning the Plans and administration of the Plans; and (d) participating in settlement negotiations with Defendants' counsel, presided over by Sixth Circuit Mediator, Mariann Yevin, Esq.

2.4.    Releasees deny any and all liability to Plaintiff, members of the Settlement Class and/or the Plans, and deny any and all allegations of wrongdoing made in the Action.  Releasees aver that the Plans are Church Plans as defined in ERISA § 3(33), exempt from coverage under ERISA.  This Settlement is not evidence of liability of any type.  This matter has been settled to avoid further cost, expense, and time associated with litigation.

2.5.    On May 9, 2014, the Court issued an opinion granting Defendants' Motion to Dismiss in its entirety.  *See Overall v. Ascension,* 23 F. Supp. 3d 816 (E.D. Mich. 2014).  On June 6, 2014, Plaintiff timely filed her Notice of Appeal.  On September 22, 2014, Plaintiff filed her opening brief with the Sixth Circuit.

2.6.    Plaintiff denies any and all theories of defense asserted in Defendants' Motion to Dismiss.  The Settlement is not evidence of Plaintiff's agreement with the holdings of the Court in *Overall v. Ascension,* 23 F. Supp. 3d 816 (E.D. Mich. 2014), nor does this Settlement in any way alter that holding, as Defendants maintain that the Court ruled correctly in its decision.

2.7.    Class Counsel believes that the Settlement will provide a benefit to the Settlement Class, and that, when that benefit is weighed against the attendant risks of continuing the prosecution of the Action, the Settlement represents a reasonable, fair, and adequate resolution of the claims of the Settlement Class.  In reaching this conclusion, Class Counsel has considered, among other things, the risks of litigation (including the Court's dismissal and the Plaintiff's appeal of that decision, as well as the risk of proving both liability and loss to the Plans, if Plaintiff's appeal were successful); the time necessary to achieve a complete resolution through litigation; the complexity of the claims set forth in the Complaint; the ability of Defendants to withstand judgment; and the benefit accruing to the Plans' participants under the Settlement.

2.8.    Defendants desire to resolve fully and settle with finality the Action and all of Plaintiff's Released Claims for herself, the Settlement Class, and the Plans, thereby avoiding the risk, expense, inconvenience, burden, distraction and diversion of their personnel and resources, and uncertainty of outcome that is inherent in any litigation, associated with the Action.

2.9.   Plaintiff and Defendants have thus reached this Settlement by and through their respective counsel on the terms and conditions set forth here, which they have had a full and meaningful opportunity to consider with the advice of their respective counsel.

3.   CONDITIONS TO EFFECTIVENESS OF THE SETTLEMENT

3.1.   *Effectiveness of This Settlement Agreement.*  This Settlement Agreement shall not become binding unless and until each and every one of the following conditions in §§ 3.2 through 3.8 shall have been satisfied.

3.2.   *Court Approval.*  The Settlement contemplated under this Settlement Agreement shall have been approved by the Court, as provided for in this § 3.3.  The Parties agree jointly to recommend to the Court that it approve the terms of this Settlement Agreement and the Settlement contemplated hereunder.  The Parties agree to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement, and any other steps or efforts which may become necessary by order of the Court (unless such order modifies the terms of this Settlement Agreement) or otherwise, to carry out this Settlement Agreement, including the following:

3.2.1   *Motion for Preliminary Approval of Settlement and of Notices.*  The Court shall have approved the preliminary motion to be filed by Plaintiff on or before May 11, 2015 ("Preliminary Motion") by issuing an order in substantially the same form as attached hereto as <u>Exhibit 1</u> (the "Preliminary Approval Order"), including the form of class notice in substantially the form as attached hereto as <u>Exhibit A</u> to the Preliminary Approval Order (the "Class Notice"):

  (a) Preliminarily approving this Settlement Agreement;

  (b) Directing the time and manner of the Class Notice; and

  (c) Finding that: (i) the proposed form of Class Notice fairly and adequately: (A) describes the terms and effect of this Settlement Agreement and of the Settlement, (B) gives notice to the Settlement Class of the time and place of the hearing of the motion for final approval of this Settlement Agreement, and (C) describes how the recipients of the Class Notice may object to approval of this Settlement Agreement; and (ii) the proposed manner of communicating the Class Notice to the members of the Settlement Class is the best notice practicable under the circumstances.

3.2.2   *Class Certification.*

  (a) The Court shall have certified the Action as a non-opt out class action for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or (b)(2), with Named Plaintiff as the named Settlement Class representative, Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll, PLLC, and Stephen F. Wasinger, PLC as Class Counsel, and with a "Settlement Class" as defined above.

    (b)  The Parties agree to stipulate to a certification of the Action as a non-opt out class action for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or (b)(2), on the foregoing terms. If the Settlement does not become Final, then no Settlement Class will be deemed to have been certified by or as a result of this Settlement Agreement, and the Action will for all purposes revert to its status as of the day immediately prior to the date on which the Term Sheet was executed.

  3.2.3 *Issuance of Class Notice*. On the date and in the manner set by the Court in its Preliminary Approval Order, Ascension Health Alliance will cause notice of the Preliminary Approval Order to be delivered to the Settlement Class in the form and manner approved by the Court. The Parties shall confer in good faith with regard to the form of the Class Notice in an effort to utilize cost effective forms of notice. The Parties agree, and the form of Preliminary Approval Order attached hereto as <u>Exhibit 1</u> shall provide, that the last known addresses for members of the Settlement Class in the possession of the Plan's current record-keeper will suffice for all purposes in connection with this Settlement, including, without limitation, the mailing of the Class Notice. Ascension Health Alliance will pay the cost for notice to the Settlement Class as part of the settlement administration.

  3.2.4 *Internet/Publication of Class Notice*. Class Counsel also shall have given Notice by publication of the Settlement Agreement and Class Notice on www.kellersettlements.com.

  3.2.5 *The Fairness Hearing*.

    (a)  On the date set by the Court in its Preliminary Approval Order, the Parties shall participate in the hearing (the "Fairness Hearing") during or after which the Court will determine by order (the "Final Approval Order", attached hereto as <u>Exhibit 2</u>) whether: (i) this Settlement Agreement is fair, reasonable and adequate and should be approved by the Court; (ii) final judgment approving this Settlement Agreement should be entered ("Judgment"); (iii) the Settlement Class should be certified as a mandatory non-opt-out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23; (iv) the requirements of Federal Rule of Civil Procedure 23 and due process have been satisfied in connection with the distribution of the Class Notice to members of the Settlement Class; (v) the requirements of the Class Action Fairness Act have been satisfied; (vi) to award Plaintiff an Incentive Fee and if so, the amount; and (vii) to award attorneys' fees and further expenses to Class Counsel and other attorneys who represent members of the Settlement Class and if so, the amounts.

    (b)  The Parties covenant and agree that they will reasonably cooperate with one another in obtaining an acceptable Final Approval Order at the Fairness Hearing and will not do anything inconsistent with obtaining such a Final Approval Order, except that Defendants may oppose the award of an Incentive Fee to Plaintiff.

      3.2.6   *Motion for Final Approval of Class Action Settlement*.  On the date set by the Court in its Preliminary Approval Order, Plaintiff shall have filed a motion (the "Final Approval Motion") for a Final Approval Order.  The Final Approval Motion shall seek the Court's finding that the Final Approval Order is a final judgment disposing of all claims and all Parties.

3.3.    *Finality of Final Approval Order*.  The Final Approval Order shall have become Final, as defined in § 1.10 of this Settlement Agreement.

3.4.    *Compliance with the Class Action Fairness Act*.  The Court shall have determined that Defendants complied with the Class Action Fairness Act of 2005 ("CAFA") and its notice requirements by providing appropriate federal and state officials with information about the Settlement.

3.5.    *Dismissal of Action*.  The Action shall have been dismissed with prejudice as against Defendants on the Effective Date of Settlement.

3.6.    *Dismissal of United States of America*.  The United States of America shall have been dismissed with prejudice as a party to the Action by Plaintiff, with the United States and Plaintiff to each bear its own attorney's fees and costs, except only as provided by this Agreement.

3.7.    *Funding of Class Settlement Amount*.  Pursuant to Paragraph 3 of the Term Sheet, thirty (30) days after the Final Approval Order approving the settlement becomes Final and non-appealable, Ascension Health Alliance will make a one-time eight million dollar ($8,000,000) contribution to the Plans, allocated among the Plans in the sole discretion of Ascension Health Alliance .

3.8.    *No Termination.*  The Settlement shall not have terminated pursuant to § 9 below.

3.9.    *Materiality of Settlement Agreement Conditions*.  The Parties expressly acknowledge that the effectiveness of this Settlement Agreement is specifically conditioned upon the occurrence of each and every one of the foregoing conditions precedent prior to the Effective Date of Settlement Agreement, and that a failure of any condition set forth in §§ 3.1 through 3.8 above at any time prior to the Effective Date of Settlement Agreement shall make this Settlement Agreement, and any obligation to pay the eight million dollars ($8,000,000) or amounts specified in § 8.1.3, or any portion thereof, null, void, and of no force and effect.

3.10.    *Establishment of Effective Date of Settlement Agreement*.  If Plaintiff and Defendants disagree as to whether each and every condition set forth in § 3 has been satisfied, they shall promptly confer in good faith and, if unable to resolve their differences within five (5) business days thereafter, shall present their disputes for determination to the Court, which shall retain jurisdiction for this purpose.  No portion of the Class Settlement Amount shall be disbursed in the event of such a dispute pending the Court's ruling.  Disbursement shall thereafter be made pursuant to the Court's order.

4. RELEASES AND COVENANT NOT TO SUE

4.1. *Released Claims.* Released Claims shall mean any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, expenses and costs arising out of the allegations of the Complaint that were brought or could have been brought as of the date of the Settlement Agreement, including any current or prospective challenge to the "Church Plan" status of the Plans, whether or not such claims are accrued, whether already acquired or subsequently acquired, whether known or unknown, in law or equity, brought by way of demand, complaint, cross-claim, counterclaim, third-party claim, or otherwise. Plaintiff, on behalf of herself and on behalf of the Settlement Class, hereby expressly waives and relinquishes, to the fullest extent permitted by law and equity, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor and any and all provisions, rights and benefits of any similar statute, law or principle or common law of the United States, any state thereof, or any other jurisdiction." Released Claims are not intended to include the release of any of the following:

     4.1.1   Any rights or duties arising out of the Settlement Agreement, including the express warranties and covenants in the Settlement Agreement;

     4.1.2   Individual claims for benefits pursuant to the terms of the Plans' documents;

     4.1.3   Should the Roman Catholic Church ever disassociate itself from a Plan's sponsor, as that term is defined in the respective Plan documents, any claim arising under ERISA with respect to any event occurring after such action by the Roman Catholic Church;

     4.1.4   Any claim arising under ERISA with respect to any event occurring after the Internal Revenue Service issues a written ruling that a Plan does not qualify as a Church Plan; the United States Supreme Court holds that Church Plans must be established by a church or a convention or association of churches; or an amendment to ERISA is enacted and becomes effective as a law of the United States specifying that a Church Plan must be established by a church or a convention or association of churches.

4.2. *Release by Named Plaintiff and Settlement Class.* Subject to § 10 below, upon the Effective Date of Settlement, Named Plaintiff on behalf of herself and on behalf of the Settlement Class absolutely and unconditionally releases and forever discharges the Releasees from any and all Released Claims that Plaintiff or the Settlement Class directly, indirectly, derivatively, or in any other capacity ever had, now have or hereafter may have. The Settlement Class covenants and agrees: (i) not to file against any of the Releasees any claim based on, related to, or arising from any Released Claim; and (ii) that the forgoing covenants and agreements shall be a complete defense to any such claim against any Releasee.

4.3. *Defendants' Releases of Named Plaintiff, the Settlement Class, and Class Counsel.* Subject to § 10 below, upon the Effective Date of Settlement, Defendants absolutely and unconditionally release and forever discharge the Named Plaintiff, the Settlement Class and Class Counsel from any and all claims relating to the institution or prosecution of the Action.

4.4.   *Releasees' Release of Other Releasees*.  Subject to § 10 below, upon the Effective Date of Settlement, each of the Releasees also releases each of the other Releasees from any and all Claims which were asserted in the Complaint or any pleading which would have been required to be filed in the Action or that would be barred by principles of res judicata or collateral estoppel had the claims asserted in the Complaint or any such other pleading in the Action been fully litigated and resulted in a Final judgment or order.

5.   COVENANTS

Named Plaintiff, on her own behalf and on behalf of the members of the Settlement Class, the Plans, and Defendants, hereby covenants as follows:

5.1.   *Taxation of Class Settlement Amount*.  Named Plaintiff acknowledges that neither Defendants, Releasees nor any of their Representatives or Successors-In-Interest shall have any responsibility for any taxes that may be due on the Class Settlement Amount, or on any funds that the Plans, members of the Settlement Class, or Named Plaintiff receive from the Class Settlement Amount.  Nothing herein shall constitute an admission or representation that any taxes will or will not be due on the Class Settlement Amount or any allocation or disbursement therefrom.

5.2.   *Non-Disparagement*.  The Parties, their counsel, and their agents shall refrain from making derogatory or disparaging comments as to the Settlement Agreement, Plaintiff, Plaintiff's Counsel, any Releasee, Defendants, the Plans, and/or Defendants' Counsel.

6.   REPRESENTATIONS AND WARRANTIES

6.1.   *Parties' Representations and Warranties*.

6.1.1   Named Plaintiff represents and warrants that she has not assigned or otherwise transferred any interest in any Released Claims against any Releasee, and further covenants that she will not assign or otherwise transfer any interest in any Released Claims.

6.1.2   Named Plaintiff represents and warrants that she shall have no surviving claim or cause of action against any of the Releasees with respect to the Released Claims against them.

6.1.3   The Parties, and each of them, represent and warrant that they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among their counsel; in executing this Settlement Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; except as expressly stated herein, they have not been influenced to any extent whatsoever in executing this Settlement Agreement by any representations, statements or omissions pertaining to any of the foregoing matters by any other Party or its Representatives; and each Party assumes the risk of and unconditionally waives any and all claims or defenses arising out of any alleged mistake as to facts or law.

9

6.1.4 The Parties, and each of them, represent and warrant that they have carefully read the contents of this Settlement Agreement; they have made such investigation of the facts and law pertaining to this Settlement Agreement and all of the matters pertaining thereto as they deem necessary; and this Settlement Agreement is executed freely by each Person executing it on behalf of each of the Parties.

6.2. Signatories' Representations and Warranties. Each individual executing this Settlement Agreement on behalf of any other Person does hereby personally represent and warrant to the other Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal which such individual represents or purports to represent.

7. NO ADMISSION OF LIABILITY

The Parties understand and agree that this Settlement Agreement embodies a compromise and settlement of disputed claims, and that nothing in this Settlement Agreement, including the furnishing of consideration for this Settlement Agreement, shall be deemed to constitute any finding that ERISA governs the Plans and/or any wrongdoing by any of the Releasees as it pertains to the allegations of the Complaint. This Settlement Agreement and the payments made hereunder are made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal, equitable, or factual. Moreover, the Releasees specifically deny any such liability or wrongdoing. Neither the fact nor the terms of this Settlement Agreement shall be offered or received in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce this Settlement Agreement or arising out of or relating to the Final Order.

8. SETTLEMENT PAYMENTS

8.1. *The Class Settlement Amount.*

8.1.1 As provided in § 3.7, thirty (30) days after the Final Approval Order approving the settlement becomes Final and non-appealable, Ascension Health Alliance shall make a one-time eight million dollar ($8,000,000) contribution to the Plans, allocated among the Plans in the sole discretion of Ascension Health Alliance.

8.1.2 The eight million dollar ($8,000,000) contribution pursuant to § 8.1.1 above shall constitute the "Class Settlement Amount."

8.1.3 *Payment to Plaintiff's Counsel.* Defendants acknowledge Plaintiff will request that the Court award Plaintiff's Counsel its attorney fees and expenses, and Plaintiff herself an Incentive Fee, and Plaintiff agrees that the maximum amount Ascension Health Alliance will pay Plaintiff's Counsel for its attorney fees and expenses and Plaintiff's Incentive Fee is capped at two million dollars ($2,000,000). Plaintiff's Counsel's attorney fees, expenses, and an Incentive Fee for Plaintiff will be subject to the discretion and approval of the District Court. Defendants, their Representatives, and Successors-in-Interests will oppose the award of an Incentive Fee to Plaintiff. Thirty (30) days after the Order approving the settlement becomes Final and non-

appealable, Ascension Health Alliance will pay Plaintiff's Counsel the maximum of two million dollars ($2,000,000) or any lesser amount as ordered by the District Court in its discretion.

       8.1.4  *Application for Fees, Expenses, and An Incentive Fee for Plaintiff*.  As provided in § 8.1.3 above, thirty (30) days after the Order approving the settlement becomes Final and non-appealable, Ascension Health Alliance shall pay Plaintiff's Counsel the amount specified in § 8.1.3.  Class Counsel shall petition the Court no later than thirty-one (31) days prior to the Fairness Hearing for an award of attorneys' fees and costs and an Incentive Fee to Plaintiff, as specified in § 8.1.3.  Defendants, their Representatives and Successors-In-Interest expressly agree not to contest or take any position with respect to any application for attorneys' fees and expenses incurred by Class Counsel with respect to this Settlement, and acknowledge that these matters are left to the sound discretion of the Court with the exception that Defendants, their Representatives, and Successors-in-Interests will oppose the award of an Incentive Fee to Plaintiff.

8.2.    *Cost of Notice*.  Ascension Health Alliance shall pay the cost for class notice in addition to the amounts specified in § 8.1.

8.3.    *Sole Monetary Contributions*.  The payments provided for in § 8.1 and § 8.2 shall be the full and sole consideration made by or on behalf of the Releasees in connection with the Action and this Settlement Agreement.  The amount specified in § 8.1.3 specifically satisfies any claims for costs and attorneys' fees by Class Counsel and claims for an Incentive Fee to Named Plaintiff.  Except as set forth above, the Parties shall bear their own costs and expenses (including attorneys' fees).

9.       AGREED UPON PLAN PROVISIONS

9.1.    *Scope*.  The provisions of the Settlement Agreement shall apply to all Plans.  Each of the Plans as defined in § 1.14 is referred to singularly as a Plan.

9.2.    *Benefits Commitment*.  For the period commencing on January 1, 2015 through June 30, 2022, Ascension Health Alliance will guarantee the Plans have sufficient funds to pay participants the level of benefit stated in the Plans.

9.3.    *Plan Mergers*.  For the period commencing on January 1, 2015 through June 30, 2022, if any Plan is merged with or into another Plan, participants will be entitled to the same (or greater) benefits post-merger as they enjoyed before the merger.

9.4.    *Plan Amendments*.  For the period commencing on January 1, 2015 through June 30, 2022, in the case of an amendment to any Plan, the actuarial value of a participant's accrued benefit under the terms of the Plan shall be no less than it was the day immediately prior to the effective date of the amendment.

9.5.    *Plan Termination*.  For the period commencing on January 1, 2015 through June 30, 2022, none of the Plans may be terminated unless there are sufficient assets to meet the life annuity and lump sum distribution amounts (as those terms are defined by the relevant Plan), elected by participants in a termination, including any administrative costs.

9.6. *Plan Administration.* The Plan documents shall: (a) name a fiduciary; (b) provide a procedure for establishing and carrying out the current funding policy and method; (c) describe a procedure for allocation of administration responsibilities; (d) provide a procedure for plan amendments and identifying the persons with authority to make such amendments; (e) specify the basis on which payments are made to and from the Plans; and (f) provide a joint and survivor annuity as currently defined in the Plans.

9.7. *Summary Plan Descriptions.* The Plans' summary plan descriptions shall be distributed within four months of the time that the Order approving the settlement becomes Final and non-reviewable. The summary plan descriptions shall: (a) exclude any mention of ERISA or information about ERISA rights; (b) include information about the Plans' Church Plan status, including that the Plans' benefits are not insured by the Pension Benefit Guaranty Corporation; (c) make it clear that the Plans are Church Plans; (d) be in the same form and manner as they are now written; (e) not comply with ERISA § 102; (f) be distributed electronically; however, if a participant sends a written request for an summary plan description, once during any calendar year a summary plan description will be provided in hard copy format at the expense of the participant.

9.8. *Annual Summaries, Pension Benefit Statements, and Current Benefit Values.* The Plans' annual summaries, pension benefit statements, and/or current benefit values (the content of said communications to be determined solely by Ascension) will be distributed electronically in the format determined by Ascension, or on request, and at the expense of the participant, once during any calendar year paper copies of such documents will be provided.

9.8.1 Annual Summaries. Annual summaries shall include: (a) plan names and EIN; (b) plan years covered by the summary; (c) summary of funding arrangements; (d) summary of Plan's expenses; (e) information as to the number of participants at year end; (f) summary of the value of net assets at beginning and end of each year; (g) a statement of the Plan's assets and liabilities; (h) summary information as to the increase and/or decrease in net plan assets annually; (i) summary information as to Plan's total income; and (j) a statement of assets and liabilities consistent with the Plans' methodologies, not later than the next October 1 following the end of each plan year.

9.8.2 Pension Benefit Statements. Ascension shall provide pension benefit statements at least every three years, the content, distribution and format to be determined solely by Ascension.

9.8.3 Current Benefit Values. Ascension will respond to requests from participants for current benefit values information, as determined solely by Ascension, within thirty (30) days after receiving a written request from a participant. However, Ascension may unilaterally extend its deadlines to respond by an additional thirty (30) days, by providing written notice to the participant.

9.9. *Plans' Claim Review Procedure.* The Plans' claim review procedures, which shall be included as part of Summary Plan Descriptions, shall state: (a) the identity of the person or entity to whom a claim should be addressed; (b) the time period for filing a claim; (c) the information that must be provided in support of the claim; (d) if a claim is denied, in whole or in part, the

person to whom an appeal should be sent; (e) the time period for filing a claim appeal; (f) the information the claimant must provide in support of an appeal; and (g) any statute of limitation period for filing a benefits related claim.

10.    TERMINATION OF THE SETTLEMENT AGREEMENT

10.1.  *Termination By Defendants*.  Defendants may terminate this Settlement Agreement if, before the issuance of the Final Approval Order, the U.S. Department of Justice files any objection to the Settlement Agreement or Settlement in any court, brings a claim against any of the Releasees, or notifies any Releasee that it intends to file such a claim.  Defendants also may terminate this Settlement Agreement if, before the issuance of the Final Approval Order, a member of the Settlement Class brings a claim against any of the Releasees, or notifies any Releasee that it intends to file such a claim.

10.2.  *Automatic Termination*.  This Settlement Agreement shall automatically terminate, and thereupon become null and void, in the following circumstances:

    10.2.1  If the Court declines to approve the Settlement, and if such order declining approval has become Final, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the date that any such order becomes Final, provided, however, that if the Court declines to approve the Settlement for any reason, the Parties shall negotiate in good faith to cure any deficiency identified by the Court, and further provided that if necessary to cure any such deficiency, Class Counsel shall re-submit within a reasonable time the Preliminary or Final Approval Motion with an additional or substitute member of the Settlement Class as a named Class Representative.

    10.2.2  If the Court issues an order in the Action modifying the Settlement Agreement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Court or by the Parties, then, provided that no Review Proceeding is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first day after issuance of the order referenced in this § 10.2.2.

    10.2.3  If the Sixth Circuit reverses the District Court's order approving the Settlement, and if within ninety-one (91) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Sixth Circuit or by the Parties, then, provided that no Review Proceeding is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the ninety-first day after issuance of the Sixth Circuit order referenced in this § 10.2.3.

    10.2.4  If the Supreme Court of the United States reverses or remands a Sixth Circuit order approving the Settlement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Supreme Court or by the Parties, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first day after issuance of the U.S. Supreme Court order referenced in this § 10.2.4.

   10.2.5  If a Review Proceeding is pending of an order declining to approve the Settlement Agreement or modifying this Settlement Agreement, this Settlement Agreement shall not be terminated until Final resolution or dismissal of any such Review Proceeding, except by written agreement of the Parties.

10.3. *Consequences of Termination of the Settlement Agreement*.  If the Settlement Agreement is terminated and rendered null and void for any reason, the following shall occur:

   10.3.1  The Action shall for all purposes with respect to the Parties revert to its status as of the day immediately prior to the execution of the Term Sheet.  The Parties will cooperate in trying to return the Action to the Sixth Circuit for decision on the matters pending before the Sixth Circuit at the time of execution of the Term Sheet.  The Parties agree that Plaintiff will not be deemed to have waived her right to appeal the Court's May 9, 2014 dismissal of the Complaint.

   10.3.2  All Releases given or executed pursuant to the Settlement Agreement shall be null and void; none of the terms of the Settlement Agreement shall be effective or enforceable; neither the fact nor the terms of the Settlement Agreement shall be offered or received in evidence in this Action or in any other action or proceeding for any purpose, except in an action or proceeding arising under this Settlement Agreement.

11.  MISCELLANEOUS PROVISIONS

11.1. *Jurisdiction*.  The Court shall retain jurisdiction over all Parties, the Action, and this Settlement Agreement to resolve any dispute that may arise regarding this Settlement Agreement or the orders and notice referenced in § 3 above, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Settlement Agreement and no Party shall oppose the reopening and reinstatement of the Action on the Court's active docket for the purposes of effecting this § 11.1.

11.2. *Governing Law*.  This Settlement Agreement shall be governed by the laws of the United States, including federal common law, except to the extent that, as a matter of federal law, state law controls, in which case Missouri law will apply without regard to conflict of law principles.

11.3. *Severability*.  The provisions of this Settlement Agreement are not severable.

11.4. *Amendment*.  Before entry of a Final Approval Order, any common law to the contrary notwithstanding, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties.  Following entry of a Final Approval Order, any common law to the contrary notwithstanding, the Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties, and approved by the Court.

11.5. *Waiver*.  The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving Party.  The waiver by any Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach of this Settlement Agreement, whether prior, subsequent, or contemporaneous with this Settlement Agreement.

11.6.   *Construction*.  None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against a drafter.

11.7.   *Principles of Interpretation*.  The following principles of interpretation apply to this Settlement Agreement:

      11.7.1 *Headings*.  The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

      11.7.2 *Singular and Plural*.  Definitions apply to the singular and plural forms of each term defined.

      11.7.3 *Gender*.  Definitions apply to the masculine, feminine, and neuter genders of each term defined.

      11.7.4 *References to a Person*.  References to a Person are also to the Person's permitted successors and assigns.

      11.7.5 *Terms of Inclusion*.  Whenever the words "include," "includes" or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

11.8.   *Further Assurances*.  Each of the Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

11.9.   *Survival*.  All representations, warranties and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of Settlement.

11.10.  *Notices*.  Any notice, demand or other communication under this Settlement Agreement (other than notices to members of the Settlement Class) shall be in writing and shall be deemed duly given if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed facsimile, or delivered by reputable express overnight courier:

A.      IF TO NAMED PLAINTIFF:

        Lynn Lincoln Sarko
        Ron Kilgard
        Havila C. Unrein
        Laurie B. Ashton
        Matthew M Gerend
        KELLER ROHRBACK L.L.P.
        1201 Third Avenue, Suite 3200
        Seattle, WA  98101-3052
        Fax: (206) 623-3384

    Karen L. Handorf
    Michelle C. Yau
    COHEN MILSTEIN SELLERS & TOLL, PLLC
    1100 New York Ave., NW, Suite 500 West
    Washington, DC 20005
    Fax: (202) 408-4699

    Stephen F. Wasinger
    STEPHEN F WASINGER PLC
    32121 Woodward Avenue, Suite 300
    Royal Oak, MI 48073
    Fax: (248) 544-1501

 B.  IF TO DEFENDANTS:

    Howard Shapiro
    Robert W. Rachal
    Stacey C.S. Cerrone
    PROSKAUER ROSE LLP
    650 Poydras Street, Suite 1800
    New Orleans, LA 70130
    Fax: (504) 310-2022

    Michael P. Coakley
    Paul Hudson
    Brian M. Schwartz
    MILLER, CANFIELD
    150 W. Jefferson Avenue, Suite 2500
    Detroit, MI 48226-4415
    Fax: (313) 496-8451

Any Party may change the address at which it is to receive notice by written notice delivered to the other Parties in the manner described above.

11.11. *Entire Agreement*. This Settlement Agreement contains the entire agreement among the Parties relating to the settlement of the Action. It specifically supersedes any settlement terms or settlement agreements relating to Defendants that were previously agreed upon orally or in writing by any of the Parties, including the terms of the Term Sheet and any and all discussions, representations, warranties or the like prior to the Effective Date of this Settlement Agreement.

11.12. *Counterparts*. This Settlement Agreement may be executed by exchange of faxed executed signature pages, and any signature transmitted by facsimile for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement. This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

11.13. *Binding Effect.* This Settlement Agreement binds and inures to the benefit of the parties hereto, their assigns, heirs, administrators, executors and Successors-in-Interest.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

### FOR NAMED PLAINTIFF AND THE SETTLEMENT CLASS

Dated this 7th day of May, 2015.

By: _____
Lynn L. Sarko
Ron Kilgard
Havila C. Unrein
Laurie B. Ashton
Matthew M Gerend
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Karen L. Handorf
Michelle C. Yau
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., NW, Suite 500 West
Washington, DC 20005

Stephen F. Wasinger
STEPHEN F WASINGER PLC
32121 Woodward Avenue, Suite 300
Royal Oak, MI 48073

*Class Counsel*

*FOR ALL DEFENDANTS*

Dated this 7th day of May, 2015.

By: _____
Howard Shapiro
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 70130

Michael P. Coakley
Brian M. Schwartz
MILLER, CANFIELD
150 W. Jefferson Avenue, Suite 2500
Detroit, MI 48226-4415
Phone: 313-496-7551

*Attorneys for All Defendants*

18

49249477v1